**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| EMILY CASTILLO, *et al.*, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case Number: 1:20-cv-06786 |
| UNILEVER UNITED STATES, INC., and | : | |
| CONOPCO, INC. d/b/a UNILEVER | : | |
| HOME & PERSONAL CARE USA, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**FOLEY & MANSFIELD, PLLP**
70 West Madison Street, Suite 3000
Chicago, IL 60602
312-254-3810

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212.419.5853

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF THE ALLEGATIONS ...........................................................2

    A.    DMDM Hydantoin Is a Safe Preservative. ...........................................2

    B.    The Amended Complaint Alleges No False Statements.........................3

    C.    The Named Plaintiffs Suffered No Injury...............................................4

LEGAL STANDARD...........................................................................................6

ARGUMENT.......................................................................................................7

    I.    THE AMENDED COMPLAINT'S FAILURE TO ALLEGE INJURY-IN-FACT DEPRIVES PLAINTIFFS OF ARTICLE III STANDING, MANDATING DISMISSAL UNDER FED.R. CIV.P. 12(b)(1). ......................................................7

        A.    A Consumer Complaining of an Allergen, But Who Suffers No Allergic Reaction Herself, Has No Injury.................................................8

        B.    An Allergen Does Not Render a Product "Unsafe" and Plaintiffs Suffered No Financial Injury from Purchasing an "Unsafe" Product. .....................11

        C.    Unilever Did Not Misrepresent the Quality of the TRESemmé Products. 13

        D.    There is No Risk of Future Injury Sufficient to Afford Standing for Injunctive Relief.........................................................15

    II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER STATE CONSUMER FRAUD LAWS (COUNTS I, VI-X, XII-XVIII) AND FOR COMMON LAW FRAUD (COUNT IV)...........................................................16

        A.    The Amended Complaint Fails to Plead Any Cognizable Injury. .............16

        B.    The Amended Complaint Fails To Plead A Specific Misrepresentation Upon Which Plaintiffs Relied Or That Caused Their Purchases...............17

        C.    The Amended Complaint Fails to Plead Any Deceptive Act or Practice..21

    III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (COUNT XI).23

    IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTY (COUNTS II AND III). .............24

A.      The Amended Complaint Fails To Plead That The Shampoos Plaintiffs Purchased Did Not Perform As Allegedly Promised Or Were Not Fit For Their Intended Or Ordinary Purpose. ........................................................24

B.      The Amended Complaint Admits the Absence of Privity With Unilever, A Required Element In Most Jurisdictions. ...................................................27

V.      THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT (COUNT V). ................................................................................28

CONCLUSION ..............................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 100% Grated Parmesan Cheese Mktg. & and Sales Pracs. Litig.*,
393 F. Supp.3d 745 (N.D. Ill. 2019) ................................................................14, 18

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
275 F. Supp. 3d 910 (N.D. Ill. 2017) ................................................................22, 28

*Am. Honda Motor Co. v. Superior Ct.*,
199 Cal. App. 4th 1367 (2011) ................................................................27

*Am. Mariculture, Inc. v. Syaqua Americas, Inc.*,
No. 2:20-CV-711-JES-MRM, 2021 WL 2315003 (M.D. Fla. June 7, 2021) ........................16

*In re Aqua Dots Prod. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011) ................................................................11, 12, 13

*Arcure v. Kellogg Co.*,
No. 210CV192FTM36SPC, 2011 WL 13294631 (M.D. Fla. Mar. 29, 2011).......................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................6

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ................................................................18, 21, 24

*Barragan v. Gen. Motors LLC*,
No. 4:14-CV-93-DAE, 2015 WL 5734842 (W.D. Tex. Sept. 30, 2015)................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................6, 11, 25

*Benson v. Fannie May Confections Brands, Inc.*,
No. 17 C 3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018).................................................15

*Berg v. Invacare Corp.*,
No. CV 17-12362, 2020 WL 8408966 (E.D. Mich. Feb. 25, 2020) ......................................25

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ................................................................20, 22

*In re Bridgestone/Firestone, Inc.*,
288 F.3d. 1012 (7th Cir. 2002) ................................................................26

*Briehl v. Gen. Motors Corp.*,
   172 F.3d 623 (8th Cir. 1999) ...........................................................................16

*Brisson v. Ford Motor Co.*,
   349 F. App'x 433 (11th Cir. 2009) .....................................................................27

*Bussie v. Am. Sec. Ins. Co.*,
   No. CV 20-3519, 2021 WL 2206282 (E.D. Pa. June 1, 2021) ...............................16

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) .................................................................7, 18, 23, 24

*In re Canon Cameras*,
   237 F.R.D. 357 (S.D.N.Y. 2006) ........................................................................16

*Cheng v. BMW of N. Am., LLC*,
   No. CV 12-09262 GAF SHX, 2013 WL 3940815 (C.D. Cal. July 26, 2013) ..........6

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................................15

*Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*,
   No. 04 C 3879, 2005 WL 433327 (N.D. Ill. Feb. 22, 2005).....................................23

*Davis v. Fresh Mkt., Inc.*,
   No. 1:19-CV-24245-PCH, 2020 WL 3489369 (S.D. Fla. June 26, 2020)...............28

*Davis v. G.N. Mortg. Corp.*,
   396 F.3d 869 (7th Cir. 2005) .............................................................................22

*Dickie v. Cannondale Corp.*,
   No. 13-3889, 2016 WL 3765798 (Ill. Ct. App. 2016) ...........................................24

*Dix v. Edelman Fin. Servs., LLC*,
   978 F.3d 507 (7th Cir. 2020) ..............................................................................6

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .............................................................................22

*Eike v. Allergan, Inc.*,
   850 F.3d 315 (7th Cir. 2017) ...........................................................................9, 10

*Everett v. TK-Taito, L.L.C.*,
   178 S.W.3d 844 (Tex. App. 2005)..................................................................16, 27

*Felix v. Ganley Chevrolet, Inc.*,
   145 Ohio St. 3d 329 (2015)................................................................................16

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
  No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)..............................................16

*Flynn v. FCA US LLC*,
  No. 15-cv-855-SNY, 2020 WL 1492687 (S.D. Ill. Mar. 27, 2020)........................................13

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
  No. 1:02CV00013, 2005 WL 6778678 (N.D. Ohio Feb. 22, 2005) .......................................27

*Green v. G.M.C.*,
  No. A-2831-01T-5, 2003 WL 21730592 (N.J. Super. Ct. App. Div. July 10,
  2003) .....................................................................................................................................27

*Haywood v. Massage Envy Franchising, LLC*,
  887 F.3d 329 (7th Cir. 2018) ........................................................................................18, 20

*Hill v. Hoover Co.*,
  899 F. Supp. 2d 1259 (N.D. Fla. 2012)................................................................................28

*Holtec Int'l v. ARC Machines, Inc.*,
  492 F. Supp. 3d 430 (W.D. Pa. 2020)..................................................................................27

*Hubbard v. Gen. Motors Corp.*,
  No. 95 CIV. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)............................................27

*Ibarolla v. Nutrex Rsch., Inc.*,
  No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) ................................................28

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) .....................................................................................24

*Jasper v. Abbott Lab'ys, Inc.*,
  834 F. Supp. 2d 766 (N.D. Ill. 2011) ...................................................................................27

*Jett v. Warrantech Corp.*,
  436 F. Supp. 3d 1170 (S.D. Ill. 2020)..................................................................................16

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab.
  Litig.*,
  903 F.3d 278 (3d Cir. 2018)..................................................................................................9

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
  365 F. App'x 830 (9th Cir. 2010) ........................................................................................16

*Jones v. TCF Nat'l Bank*,
  No. 17-CV-13725, 2018 WL 4095036 (E.D. Mich. Aug. 28, 2018)......................................16

*Kerr v. Lambert*,
No. 03-19-00359-CV, 2020 WL 6266005 (Tex. App. Oct. 23, 2020) ...................................18

*Lambert v. Dollar Gen. Corp.*,
No. 16 C 11319, 2017 WL 2619142 (N.D. Ill. June 16, 2017) .............................................26

*Lavie v. Procter & Gamble Co.*,
105 Cal.App.4th 496 (2003) ................................................................................................22

*Lewert v. P.F. Chang's China Bistro*,
819 F.3d 963 (7th Cir. 2018) .........................................................................................12, 13

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................................................16

*Lodholtz v. York Risk Servs. Grp., Inc.*,
778 F.3d 635 (7th Cir. 2015) .................................................................................................6

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019) ............................................................................25, 28

*Manufacturers & Traders Tr. Co. v. Stone Conveyor, Inc.*,
458 N.Y.S.2d 116 (N.Y. App. Div. 1982) .........................................................................27, 28

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ...............................................................................................14

*Miller v. Heil Co.*,
No. 3:20-CV-00091, 2021 WL 927943 (W.D. Pa. Mar. 11, 2021) .......................................26

*Montgomery v. Kraft Foods Glob., Inc.*,
822 F.3d 304 (6th Cir. 2016) ...............................................................................................28

*Morlan v. Universal Guar. Life Ins. Co.*,
298 F.3d 609 (7th Cir. 2002) .................................................................................................6

*Mydlach v. DaimlerChrysler Corp.*,
226 Ill. 2d 307 (2007) .........................................................................................................24

*O'Connor v. Ford Motor Co.*,
477 F. Supp. 3d 705 (N.D. Ill. 2020) ..........................................................................18, 19, 20

*O'Neil v. Simplicity, Inc.*,
574 F.3d 501 (8th Cir. 2009) ...............................................................................................27

*Oblak v. Integra Lifesciences Corp.*,
No. 1:16 CV 1832, 2017 WL 1831098 (N.D. Ohio May 4, 2017) ........................................28

*Pattie v. Coach, Inc.*,
  29 F. Supp. 3d 1051 (N.D. Ohio 2014)...............................................................................28, 29

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) .............................................................................................18

*Reed v. Palmer*,
  906 F.3d 540 (7th Cir. 2018) ...............................................................................................7

*Reeves v. PharmaJet, Inc.*,
  846 F. Supp. 2d 791 (N.D. Ohio 2012)...............................................................................18

*Regopoulos v. Waukegan P'Ship*,
  240 Ill.App.3d 668 (1992) ..................................................................................................25

*Reid v. Unilever U.S., Inc.*,
  964 F. Supp. 2d 893 (N.D. Ill. 2013) .............................................................................23, 24

*Remijas v. Neiman Marcus Group, LLC*,
  794 F.3d 688 (7th Cir. 2015) .........................................................................................12, 13

*In re Riddell Concussion Reduction Litig.*,
  77 F.Supp.3d 422 (D.N.J. 2015) .........................................................................................29

*Riviera v. Wyeth-Ayerst Lab'ys*,
  283 F.3d 315 (5th Cir. 2002) .............................................................................................x9

*Ryan v. Brookdale Int'l Systems, Inc.*,
  230 F. App'x. 366 (5th Cir. 2007) ........................................................................................9

*Scherr v. Marriott Int'l, Inc.*,
  703 F.3d 1069 (7th Cir. 2013) ...........................................................................................15

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
  No. 05 C 2623, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009).....................................................20

*Shailja Gandhi Revocable Tr. v. Sitara Cap. Mgmt., LLC*,
  No. 09 C 3141, 2011 WL 814647 (N.D. Ill. Feb. 25, 2011)....................................................18

*Simon v. Eastern Ky. Welfare Rights Organization*,
  426 U.S. 26 (1976)............................................................................................................10

*Smith v. Hartz Mountain Corp.*,
  No. 3:12-CV-00662, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012).......................................28

*Smith-Brown v. Ulta Beauty, Inc.*,
  No. 18 C 610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019)....................................................13

*Soule v. Norton*,
750 N.Y.S.2d 692 (N.Y. App. Div. 2002) ...................................................................28

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................16, 17

*Spokeo, Inc. v. Robins*,
136 S.Ct. 1540 (2016) ...............................................................................8, 10, 11

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019) ...................................................................21, 22

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .........................................................................................8

*Tapia v. Davol, Inc.*,
116 F. Supp. 3d 1149 (S.D. Cal. 2015) ...................................................................28

*Taylor v. Trevino*,
No. 3:20-CV-0393-D, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021) .......................................29

*Tears v. Bos. Sci. Corp.*,
344 F. Supp. 3d 500 (S.D.N.Y. 2018) ....................................................................25

*TEU Servs., Inc. v. Inventronics USA, Inc.*,
No. SA-16-CV-01023-RCL, 2018 WL 3338217 (W.D. Tex. Feb. 5, 2018) ............................25

*Transunion LLC v. Ramirez*,
594 U.S. __ (2021) (slip op. ) ...................................................................1, 8, 10, 15

*Trujillo v. Apple Computer, Inc.*,
581 F. Supp. 2d 935 (N.D. Ill. 2008) ....................................................................22

*Utter v. Peachtree Companies, Inc.*,
No. 1:08CV767, 2010 WL 11635925 (S.D. Ohio Aug. 3, 2010) ........................................26

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ..............................................................................7

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) ...............................................................................7

*Vision Pharma, LLC v. Sterling Pharm. Servs., LLC*,
No. 218CV500FTM99MRM, 2019 WL 1532534 (M.D. Fla. Apr. 9, 2019) .............................28

*Voelker v. Porsche Cars N. Am., Inc.*,
353 F.3d 516 (7th Cir. 2003) ..............................................................................28

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ...................................................................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975)....................................................................................................11

*Webb v. Volvo Cars of N.A., LLC*,
    No. CV 13-2394, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018)........................................18, 28

*Weng v. Allison*,
    287 Ill. App. 3d 535 (1997) ..........................................................................................24

*White v. VNA Homecare, Inc.*,
    No. CIV. 11-971-GPM, 2012 WL 1435432 (S.D. Ill. Apr. 25, 2012)......................................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) .......................................................................................9

**STATUTES**

Cal. Com. Code § 2313(1) .............................................................................................25

Cal. Com. Code § 2314(2)(c).........................................................................................26

Fla. Stat. Ann. § 672.313(1)...........................................................................................25

Fla. Stat. Ann. § 672.314(2)(c) .......................................................................................26

Ill. Comp. Stat. 5/2-314(2)(c) .........................................................................................26

Mich. Comp. Laws Ann. § 440.2313(1) ..........................................................................25

Mich. Comp. Laws Ann. § 440.2314(2)(c).......................................................................26

N.J. Stat. Ann. § 12A:2-314(2)(c)....................................................................................26

N.J. Stat. Ann. § 12A:2A-313(1) .....................................................................................25

N.Y. U.C.C. § 2-314 (2)(c) .............................................................................................26

Ohio Rev. Code Ann. § 1302.26(A) .................................................................................25

Ohio Rev. Code Ann. § 1302.27(B)(3)..............................................................................26

Tex. Bus. & Com. Code Ann. § 2.313...............................................................................25

Tex. Bus. & Com. Code Ann. § 2.314(b)(3).......................................................................26

**RULES**

Fed. R. Civ. P. 8(a) ..............................................................................................6, 7

Fed. R. Civ. P. 9(b) ............................................................................................ passim

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 6, 7

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 6

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), Defendants Unilever United States, Inc. and Conopco, Inc. (collectively, "Unilever"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Class Action Complaint.

## INTRODUCTION

The Amended Complaint rests upon a startling proposition – that if a manufacturer accurately discloses an ingredient on a product's label, but does not include an on-label warning that some consumers may be allergic to that ingredient, then a purchaser may assert consumer fraud claims even if the purchaser herself experienced no allergic reaction and otherwise received all the product's stated benefits. Given the ubiquity of potential allergens in the world, this theory, if accepted, would open boundless liability to classes of uninjured consumers. But that is not the law.

As we explain in this memorandum, the Amended Complaint fails to state any injury, much less the kind of concrete and particularized injury required for Article III standing. While the Amended Complaint liberally uses the words "unsafe" and "misrepresentation," it does not plead that the shampoo products at issue here do not, in fact, cleanse and smooth hair as stated on the label. To the contrary, the Amended Complaint's theory is that Unilever failed to warn consumers of a potential allergy – but even if that theory stated a cause of action (and it does not), only consumers who suffered the allergic reaction would have standing to complain. None of the ten Plaintiffs allege that they themselves suffered an adverse reaction. As Justice Kavanaugh recently summed up the standing question, "plaintiffs must be able to sufficiently answer the question: 'what is it to you?'" *Transunion LLC v. Ramirez*, 594 U.S. __ (2021) (slip op. at 7) (quoting Scalia, the Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev, 881, 882 (1983)). With respect to these Plaintiffs who allege no adverse reaction themselves, the answer is "nothing."

## STATEMENT OF THE ALLEGATIONS

Unilever manufactures and markets the TRESemmé brand of hair-care products, which includes a broad portfolio of shampoos, conditioners, and other products used to clean and style hair. The Amended Complaint alleges that, in the past, the TRESemmé products included DMDM hydantoin and, more recently, that Unilever reformulated the products to remove DMDM hydantoin. (Am. Compl., ¶¶ 48, 93.)

### A. DMDM Hydantoin Is a Safe Preservative.

DMDM hydantoin is a preservative commonly used in many consumer products sold in the United States. DMDM hydantoin is a "popular formaldehyde donor," which means that, in order to preserve the product, it releases very small amounts of formaldehyde over time. (*Id*., ¶ 19, 21, 25.) The Amended Complaint concedes that DMDM hydantoin has been used in over 100 consumer products marketed in the United States, "most frequently in shampoos," and that the United States Food and Drug Administration ("FDA") permits the use of DMDM hydantoin. (*Id*., ¶¶ 26-27.) DMDM hydantoin is, in fact, safe, as multiple scientific studies published in the public record demonstrate.[1]

No facts alleged in the Amended Complaint suggest that DMDM hydantoin is inherently unsafe. Instead, and as with many substances found in food, consumer products, and the general environment, the Amended Complaint alleges that some consumers may have "allergic skin reactions" to DMDM hydantoin in the form of dermatitis. (*Id*., ¶ 23.) As the Mayo Clinic advises, "[w]hen you have allergies, your immune system makes antibodies that identify a

---

[1] *See* "Final Report on the Safety Assessment of DMDM Hydantoin," *Journal of the American College of Toxicology*, Vo1. 7, No. 3, p. 245 (1988) ("Based on the available data included in this report, it is concluded that DMDM Hydantoin is safe as a cosmetic ingredient in the present practices of use."); Annual Review of Cosmetic Ingredient Safety Assessments: 2005/2006, *International Journal of Toxicology*, 27 (Suppl. 1):77–142, 2008, pg. 105.

particular allergen as harmful, even though it isn't."[2]  Similarly, the FDA advises consumers that "[a]llergic reactions are the immune system's overreaction to substances that may otherwise be harmless."[3]

The clinical studies cited by the Amended Complaint address potential "allergic" reactions to DMDM hydantoin.  (*See* Am. Compl., footnotes 14-26.)  They include studies since the 1970s that considered "human reactivity" and a "contact allergy" to DMDM hydantoin (*id.,* ¶ 28); a 1987 study that examined "whether the presence of DMDM hydantoin in cosmetics may cause adverse effects in patients pre-sensitized to formaldehyde" (*id.,* ¶ 29 (internal quotations marks omitted)); and a 2010 study that said "clinical studies show the existence of patients allergic to formaldehyde-releasers but not to formaldehyde itself" (*id.,* ¶ 31 (internal quotations marks omitted).)  The FDA and the North American Contact Dermatitis Group both identify DMDM hydantoin as a "top allergen" or a "'common allergen.'"  (*Id.,* ¶ 30.)

### B.     The Amended Complaint Alleges No False Statements.

The Amended Complaint alleges that Unilever failed to warn consumers that they might have an adverse skin reaction if they are allergic to DMDM hydantoin.  (*Id*., ¶¶ 49-50, 193.) However, the Amended Complaint admits that Unilever accurately disclosed the presence of DMDM hydantoin itself on the products' ingredient labeling, thereby allowing consumers to avoid the product if they have a known allergy.  (*Id.*, ¶ 40.)  As the FDA advises consumers, "the best way to prevent an allergic reaction is to know what you are sensitive to and how to avoid it.

---

[2]   https://www.mayoclinic.org/diseases-conditions/allergies/symptoms-causes/syc-20351497 (last visited June 21, 2021).

[3]   https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics (last visited June 22, 2021).

One way to accomplish this is by carefully reading the product ingredient panel and avoiding ingredients you know or think you are allergic to."[4]

The Amended Complaint does not allege that Unilever made any false statements to promote sales of the TRESemmé products. It quotes statements made on the products' labels (*e.g.*, "smooth, shiny," "anti-frizz," "detangles." "shine," "softness," and "tames fly-away" (*see id.*, ¶ 35)), and later alleges that unspecified "authorized retailers" made other statements in unspecified places that do not appear on the label itself (*e.g.*, that the products would "nourish," "cleanse" or "repair" hair (*see id*., ¶¶ 88-91, 138)). However, the Amended Complaint advances no allegations suggesting that any of these statements are false or that the TRESemmé products do not, in fact, provide these benefits. Instead, the Amended Complaint alleges that Unilever included DMDM hydantoin as a so-called "unsafe ingredient" and, as a result, the TRESemmé shampoos "do not safely smooth, nourish, and repair hair" because Unilever "omit[ted] a necessary warning" for consumers who may have an allergy. (*Id*., ¶¶ 98, 193.)

### C.    The Named Plaintiffs Suffered No Injury.

Notwithstanding its extensive discussion of allergies, including quotes from a series of anonymous complaints citing what appear to be allergic reactions (*id.*, ¶¶ 62-64), the Amended Complaint does not allege that any of the ten named Plaintiffs themselves suffered an allergic reaction to DMDM hydantoin.

The Amended Complaint advances the same series of rote allegations with respect to each of the ten Plaintiffs that fails to even identify what specific TRESemmé product each Plaintiff supposedly purchased. With respect to injury, the Amended Complaint repeats the same boilerplate allegations for each Plaintiff:

---

[4]  https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics (last visited June 22, 2021).

> At the time of purchasing the Products, Plaintiff [] also reviewed the accompanying disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendants that the Products were safe to smooth, nourish, cleanse, and/or repair hair. Plaintiff [] relied on those representations and warranties in deciding to purchase Defendants' Products.
>
> ***Plaintiff [] would not have purchased the Products had she known these representations were not true.***

(*See* Am. Compl., ¶¶ 118, 124-125,131-132, 138-139, 145-146, 152-153, 159-160, 166-167, 173-174, 180-181 (emphasis added).) *That is the sum total of the alleged injury pleaded by any of the named Plaintiffs*. At no time does the Amended Complaint allege that any of the Plaintiffs themselves had an allergic reaction or that the TRESemmé products did not, in fact, "smooth, nourish, cleanse or repair [their] hair." In other words, the Amended Complaint's allegations of injury are a bare assertion that had each Plaintiff known that someone else, somewhere else, might experience an allergic reaction, then she would not have bought the product – even though she herself used the product without incident.

The Amended Complaint seeks "equitable damages" (*id.*, ¶ 1), based upon a series of counts alleging violation of consumer fraud statutes, common-law fraud, unjust enrichment, and warranty claims. Apparently recognizing that the resident state of each Plaintiff will supply the substantive law, the Amended Complaint alleges claims under the laws of Illinois, Pennsylvania, New Jersey, California, Texas, New York, Florida, Ohio, and Michigan. Plaintiffs' request for damages includes disgorgement or restitution, as well as statutory damages under state consumer protection laws. However, and notwithstanding the Amended Complaint's admission that Unilever has already formulated the TRESemmé products to remove DMDM hydantoin as an ingredient (*id*., ¶¶ 48, 93), Plaintiffs also seek an injunction requiring a product recall and

requiring Unilever to change the product labels to disclose the risk of an allergic reaction. (*Id.*, Prayer for Relief.)

## LEGAL STANDARD

Although Plaintiffs purport to plead a putative class action, only the named Plaintiffs' alleged claims and factual allegations – and not those of unnamed class members – matter for purposes of a motion to dismiss under Rule 12(b)(1) and (b)(6). *See White v. VNA Homecare, Inc.*, No. CIV. 11-971-GPM, 2012 WL 1435432, at *1 n.1 (S.D. Ill. Apr. 25, 2012) (noting that, although plaintiff "seeks to represent a class, at this juncture the Court's concern is solely with whether [plaintiff], as the named Plaintiff in this case, has stated a claim upon which relief can be granted under federal and state law") (citing *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 616 (7th Cir. 2002)); *Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (same).

Rules 12(b)(1) and 12(b)(6) allow a defendant to file a pre-Answer motion to dismiss where the complaint demonstrates a lack of standing or where it fails to state a claim for relief. "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lodholtz*, 778 F.3d at 639 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Further, "legal conclusions and conclusory allegations . . . are not entitled to this presumption of truth." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (internal quotation marks and citations omitted, ellipsis in original). On a motion to dismiss, courts may consider

-6-

documents referenced in and central to the complaint's claims. *See Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

In addition to satisfying Rule 8, a complaint sounding in fraud or deception – like the one here – must also comply with the heightened pleading standard of Rule 9(b) in order to survive a motion to dismiss. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)."). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The "circumstances constituting fraud" include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the method by which the fraud was communicated to the plaintiff. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where, and how" standard. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citations omitted).

## ARGUMENT

### I. THE AMENDED COMPLAINT'S FAILURE TO ALLEGE INJURY-IN-FACT DEPRIVES PLAINTIFFS OF ARTICLE III STANDING, MANDATING DISMISSAL UNDER FED.R. CIV.P. 12(b)(1).

A bare assertion that a plaintiff would not have purchased a product had she been advised that someone else might have an allergic reaction to a labeled ingredient is not enough to confer Article III standing. Potential allergens are ubiquitous in consumer goods; an allergen's presence does not render a consumer product unsafe or dangerous; and a consumer who uses the product without incident has received the benefit of her bargain. Were the law otherwise, the floodgates would open to class actions on behalf of masses of uninjured plaintiffs given the prevalence of potential allergens in consumer products. And there is certainly no standing to seek injunctive

relief in form of a product recall, labeling change, or other business practices change, when the Amended Complaint itself admits that Unilever has already removed DMDM hydantoin from the product formula and, in any event, Plaintiffs will not again purchase the product.

**A.      A Consumer Complaining of an Allergen, But Who Suffers No Allergic Reaction Herself, Has No Injury.**

Article III of the Constitution limits the power of the federal courts to the adjudication of "'Cases' and 'Controversies.'"  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).  Thus, a plaintiff seeking to invoke federal judicial power must first establish that she has "standing" to do so, which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for legal wrong. . . ."  *Id.*  To establish standing, a plaintiff must have "(1) an injury in fact, (2) that it is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  Further, to satisfy the injury-in-fact element, the plaintiff must "show that he or she suffered 'an invasion of a legally protected interest,'" that the injury is "concrete and particularized," and that injury is "actual or imminent, not conjectural or hypothetical."  *Id.*  Plaintiffs, as the parties seeking relief, bear the burden of showing these requirements.  *See Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

As the Supreme Court just reiterated in *Transunion LLC v. Ramirez*, a plaintiff must suffer "a concrete harm.  No concrete harm, no standing."  594 U.S. at ___ (slip op, at 1).  In *Transunion*, the Court held that thousands of Fair Credit Reporting Act class members had no standing to complain that they had wrongly been classified as terrorists by a credit-reporting agency, absent proof that credit reports had been distributed to third parties, thereby causing those class members reputational injury.  *Id*.  Absent disclosure of the false information to third parties, those class members suffered no concrete injury and lacked Article III standing.

There is no invasion of a legally protected interest absent pleading of facts to demonstrate that Plaintiffs themselves suffered an allergic reaction. Indeed, many circuits have made clear that a plaintiff's complaints regarding harm supposedly inflicted on others, but which she did not experience herself, are not sufficient to establish Article III standing. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018) ("[Plaintiff's] references to Baby Powder being *unsafe as to others* are not relevant to determining whether she has standing *herself*.") (emphasis in original); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (purchasers of kosher hot dogs lacked standing to sue based upon allegation that some products may not be 100% kosher; "'the plaintiffs must allege *their* product *actually exhibited* the alleged defect.'") (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (emphasis in original)); *Riviera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 317 (5th Cir. 2002) (consumers of painkiller drug lacked Article III standing to sue when they complained that the drug maker failed to warn of potentially harmful side effects, but the plaintiffs themselves did not experience those side effects and suffered no physical or emotional injury); *Ryan v. Brookdale Int'l Systems, Inc.*, 230 F. App'x. 366 (5th Cir. 2007) (purchasers of fire alarms lacked standing when they complained that alarms purchased by others but not purchased by themselves, failed to work properly).

By contrast, regret or disappointment with a product purchase is not enough to establish concrete harm. As the Seventh Circuit held in *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017), consumers who complained that glaucoma medicine makers made their eye droppers too big, and which in turn allowed those defendants to charge excessive prices by selling more medicine than consumers needed, lacked standing. In the absence of any collusion on price or

-9-

misrepresentations that caused actual injury, the defendants invaded no legally protected interest

of the plaintiffs. As Judge Posner wrote:

> You cannot sue a company and argue only – "it could do better by
> us" – which is all they are arguing. In fact, such a suit fails at the
> threshold, because there is no standing to sue. One cannot bring a
> suit in federal court without pleading that one has been injured in
> some way (physically, financially – whatever) by the defendant.
> That's what's required for standing. The fact that seller does not
> sell the product that you want, or at the price you'd like to pay, is
> not an actionable injury; it is just regret or disappointment – which
> is all we have here, the class having failed to allege 'an invasion of
> a legally protected interest.'

*Id.* (quoting *Spokeo*, 136 S.Ct. at 1548).

Here, the Amended Complaint complains that Unilever failed to warn consumers they

may have an allergy to DMDM hydantoin but fails to allege that any of the Plaintiffs themselves

suffered such an allergic reaction. The alleged failure to warn, therefore, does not invade any

legally protected interests of Plaintiffs and, at most, these Plaintiffs are simply claiming that

Unilever "'could do better by us.'" The Amended Complaint therefore fails to demonstrate an

injury that is "'concrete' – that is, 'real and not abstract,'" *Transunion*, 594 U.S. at ___ (slip op.

at 8) (quoting *Spokeo*, 578 U.S. at 340)), and fails to demonstrate a "particularized" injury that

"affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In

*Transunion*, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed

to a third party, causes no concrete harm." 594 U.S. at ___ (slip op. at 19). Likewise, an alleged

failure to warn that a consumer may have an allergic reaction to a disclosed ingredient, if the

consumer does not have an actual allergic reaction, causes no concrete harm either. *See Simon v.*

*Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976) (the "named plaintiffs

who represent a class 'must allege and show that they personally have been injured, not that

injury has been suffered by other, unidentified members of the class to which they belong.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *Spokeo,* 136 S. Ct. at 1547 n.6 (same).

### B. An Allergen Does Not Render a Product "Unsafe" and Plaintiffs Suffered No Financial Injury from Purchasing an "Unsafe" Product.

Plaintiffs strain to suggest a different conclusion by peppering the Amended Complaint with adjectives like "unsafe." (Am. Compl., ¶¶ 6, 73, 84, 98, 100, 104, 106, 300.) But adjectives cannot manufacture standing when it does not otherwise exist; under *Twombly*, Plaintiffs must plead *facts*, and not conclusions, setting forth a plausible claim for relief. The facts pleaded by the Amended Complaint make clear that when Plaintiffs call the TRESemmé products "unsafe," what they really allege is that Unilever, while accurately disclosing the presence of DMDM hydantoin, does not specifically call out the fact that some small number of consumers may have an adverse reaction if they are allergic to DMDM hydantoin. The presence of a potential allergen does not render a consumer product unsafe.

The Amended Complaint's liberal use of the word "unsafe" is obviously intended to shoehorn this case into the precedent of *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), where the Seventh Circuit recognized standing for purchasers of unsafe products in the absence of a physical injury. But the facts of *Aqua Dots* stand in stark contrast to those here. *Aqua Dots* found Article III standing where consumers suffered financial injury from having purchased a truly unsafe, hazardous, and worthless product – specifically, a child's toy composed of beads that, if ingested, caused "nausea, dizziness, drowsiness, agitation, depressed breathing, amnesia, unconsciousness, and death," an attribute that posed a particular hazard given the brightly colored beads' similarity to candy. *Id.* at 749. After widespread reports of severe physical injuries to children, including at least two children who fell into comas, the manufacturer recalled the product and offered consumers a refund. *Id.* at 750. The *Aqua Dots*

plaintiffs challenged the refund's adequacy. The parents' theory of injury was simple: they paid money for a toy without knowing that it was a gross safety hazard that could harm their children, which they never would have purchased had they known the truth. On these facts, the Seventh Circuit found standing even for parents whose children had not suffered a physical injury, because they paid for this worthless product and "financial injury creates standing." *Id.* at 751.

A toy that puts children into comas cannot be compared to a safe shampoo that contains a potential allergen which is accurately disclosed on the ingredient list and which consumers may avoid if they are allergic to it. Products are not rendered "unsafe" simply because some consumers may have an allergy to an ingredient; such products are certainly safe for the vast majority of consumers who do not suffer from the allergy. And most importantly here, consumers (like Plaintiffs) who buy the products, enjoy their benefits, and suffer no allergic reaction at all have no injury and lack Article III standing.

The Seventh Circuit itself has declined to extend *Aqua Dot* beyond the context of inherently unsafe or dangerous products. In *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015), the Seventh Circuit limited *Aqua Dots* to "products liability claims against defective or dangerous products" and noted its "dubious" view that the standing exists for uninjured plaintiffs outside of that context. Likewise, in *Lewert v. P.F. Chang's China Bistro*, 819 F.3d 963, 968 (7th Cir. 2018), the Seventh Circuit limited *Aqua Dots* to situations where "the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect." Dispositive here, *Remijas* and *Lewert* each held that a plaintiff's claim that she would not have done business with the defendant had she known of its deficient computer security systems did not afford Article III standing, absent a

-12-

specific pleading of facts to show that the plaintiff herself suffered a specific injury from a "hack" of her own credit card information. *Remijas*, 794 F.3d at 695; *Lewert*, 819 F.3d at 968.

Stated differently, in *Remijas* and *Lewert* the Seventh Circuit rejected the same theory advanced by the Amended Complaint – that is, that Plaintiffs would not have purchased the TRESemmé products had they known of a potential allergy, even though they themselves allege no such allergic reaction. As the Court stated in *Lewert* when distinguishing *Aqua Dots*, "we are not inclined to push this theory beyond its current scope." 819 F.3d at 968. Accordingly, the district courts have been careful to limit *Aqua Dots* to the context of unsafe, worthless products. *See Flynn v. FCA US LLC*, No. 15-cv-855-SNY, 2020 WL 1492687 (S.D. Ill. Mar. 27, 2020) (finding that consumer suing due to risk that an automobile's computer system could be, but never was, "hacked" lacked Article III standing, despite the risk of possible physical injury from the hack; limiting *Aqua Dots* to sales of a "worthless product"; and holding that the fact that a product "has vulnerabilities and could have been made safer does not make it defective when no vehicles have ever manifested the alleged defect."); *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019) (plaintiff complaining that retailer "reshelved" returned products as new products lacked Article III standing, when the plaintiff did not allege that she herself purchased a used product thinking it was new; and distinguishing *Aqua Dots* because the hazard "was inherent in the products the plaintiffs purchased, all of the beads posed the same risk of harm, and every purchaser received an inherently dangerous product.").

### C. Unilever Did Not Misrepresent the Quality of the TRESemmé Products.

Plaintiffs cannot reach a different result with a conclusory claim that Unilever "misrepresented" the TRESemmé products. Crucially, this case does not involve an allegation that Unilever falsely represented the benefits or attributes of the TRESemmé product line. The Amended Complaint nowhere alleges that the various benefits stated on the TRESemmé labels

(*e.g.*, that the shampoo would "smooth, nourish, cleanse, and/or repair hair") were themselves false or that consumers do not receive those benefits.

Instead, Plaintiffs asserted that Unilever should have warned consumers that an allergic reaction to DMDM hydantoin is possible and that the shampoos may not "smooth, nourish, cleanse, and/or repair hair" for the small set of individuals with that allergy. (Am. Compl., ¶ 98.) But a failure-to-warn theory, which derives from product liability law, is materially different from the law of fraud and, as we explained in further detail below (*see* Point II, *infra*), it is insufficient to state a claim of consumer or common-law fraud. The fact that some consumers may have an allergy does not render otherwise-truthful statements of a product's benefits false or misleading, especially where those benefits were clearly enjoyed by the vast majority of consumers who used the product without incident and who suffered no allergic reaction. But dispositive to the standing analysis is the fact that a consumer who suffers no allergic reaction has no cause to complain that a manufacturer failed to warn her of a possible allergic reaction to a disclosed ingredient. *See, e.g., McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 703, 706-07 (9th Cir. 2020) (consumers lacked standing where they complained that microwave popcorn product was unsafe because it contained harmful transfat additives that could cause "heart disease, diabetes, cancer, and other ailments," where the plaintiffs failed to allege that the defendant "made any representations about Pop Secret's safety" and the ingredient label accurately disclosed the presence of transfats).

This distinction between an alleged failure to warn of an allergy and a false statement of a product's attributes distinguishes this case from decisions finding standing where a consumer plaintiff complained that the defendant misrepresented the product's qualities, benefits, or attributes. *See, e.g., In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 393 F.

Supp.3d 745 (N.D. Ill. 2019) (defendant falsely stated that grated parmesan cheese contained cellulose to prevent caking or clumping, when in fact the defendant included cellulose as filler). A false statement of a product's benefits applies to all purchasers, while an alleged failure to warn of an allergy is relevant, at most, to those idiosyncratic consumers who have the allergy.

## D. There is No Risk of Future Injury Sufficient to Afford Standing for Injunctive Relief.

Finally, Plaintiffs lack standing to seek injunctive relief – and as the Supreme Court held in *Transunion*, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form relief that they seek (for example, injunctive relief and damages)." *Transunion*, 594 U.S. at __ (slip op. at 15-16). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights[.]" *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Here, plaintiffs do not plead even a remote possibility for future harm, much less a real and immediate threat, because the Amended Complaint itself admits that Unilever reformulated the TRESemmé products to remove DMDM hydantoin as an ingredient. (Am. Compl., ¶¶ 48, 93.) There is, therefore, nothing to enjoin and the Amended Complaint itself concedes a lack of standing to seek prospective relief. While that alone is enough to eliminate standing for injunctive relief, Plaintiffs also make clear that they will not purchase the TRESemmé products again. As courts have recognized, allegedly deceived consumers cannot establish that they are likely to continue buying the products in the future, and, without any risk of future harm, plaintiffs cannot maintain a claim for injunctive relief. *See, e.g., Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) (dismissing claim for injunctive relief, because "already aware of Fannie May's alleged

-15-

deceptive practices, Plaintiffs cannot claim they will be deceived again in the future"); *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170, 1177 (S.D. Ill. 2020) (same).

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER STATE CONSUMER FRAUD LAWS (COUNTS I, VI-X, XII-XVIII) AND FOR COMMON LAW FRAUD (COUNT IV).

### A.   The Amended Complaint Fails to Plead Any Cognizable Injury.

Even if Plaintiffs could establish standing under Article III, Plaintiffs fail to plead any injury that is cognizable under common law fraud and state consumer fraud laws. *See Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) (noting that the standard for establishing injury under the ICFA is more stringent than the standard for establishing Article III standing). A consumer fraud claim requires pleading of injury[5] – and a complaint alleging fraud or deceptive practices fails if, like the Amended Complaint here, the product worked as promised for the plaintiff. *Id.* (citing authority).

In *Spector*, the plaintiff alleged that the label on breakfast biscuits was false because it said the biscuits would provide a four-hour energy boost, which plaintiff alleged was untrue.

_____

[5] *See Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 Fed. App'x 830, 832 (9th Cir. 2010) ("If one gets the benefit of his bargain, he has no standing under" California's Unfair Competition Law); *Am. Mariculture, Inc. v. Syaqua Americas, Inc.*, No. 2:20-CV-711-JES-MRM, 2021 WL 2315003, at *4 (M.D. Fla. June 7, 2021) (Florida Deceptive and Unfair Trade Practices Act requires "actual damages"); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-56, 858 (Tex. App. 2005) (no standing under Texas' Deceptive Trade Practices Act where plaintiff received the "the benefit of their bargain; they were promised and they received seat belt buckles that latched and provided sufficient restraint."); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011) (New Jersey Consumer Fraud Act requires "ascertainable loss"); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *39 (N.D. Ill. Mar. 31, 2017) ("New York's consumer protection law also requires 'proof of malfunction.'") (quoting *In re Canon Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006)); *Bussie v. Am. Sec. Ins. Co.*, No. CV 20-3519, 2021 WL 2206282, at *9 (E.D. Pa. June 1, 2021) (Pennsylvania Unfair Trade Practices and Consumer Protection Law requires "ascertainable loss"); *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St. 3d 329, 335, 338 (2015) (Ohio Consumers Sales Protection Act requires "actual damages"); *Jones v. TCF Nat'l Bank*, No. 17-CV-13725, 2018 WL 4095036, at *4 (E.D. Mich. Aug. 28, 2018) (Michigan Consumer Protection Act requires "loss"); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (affirming dismissal of consumer fraud claims, among others, stating: "Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.").

Instead, for a consumer to experience the boost, the plaintiff alleged that a consumer had to eat the biscuit with a glass of milk. *Id.* at 663-64. Despite this general assertion, Plaintiff never alleged that she herself did not experience four-hour energy after eating the biscuit. *Id.* at 663-64, 672. Plaintiff sought to establish injury by alleging "she would not have purchased Breakfast Biscuits or else would not have paid as much for them had she known that a serving a low-fat milk was required[.]" *Id.* at 673. The court rejected that argument and dismissed plaintiffs' claim under the ICFA, finding that the complaint "has provided no factual basis for inferring [plaintiff] was injured by Defendant's alleged deceptive advertising by not experiencing the four hours of 'nutritious steady energy' promised on the Product's packaging." *Id*.

Plaintiffs' statutory consumer and common law fraud claims here merit the same fate because injury is an essential element of common law fraud and under all the consumer fraud laws cited by the Amended Complaint. As noted, the Amended Complaint alleges that the shampoos contain an allergen, DMDM hydantoin, that, when used by some consumers allergic to that ingredient, may cause irritation or hair loss. But the Amended Complaint does not allege that any Plaintiff is actually allergic to DMDM hydantoin or ever experienced any adverse reactions when using the shampoos. Plaintiffs cannot manufacturer a cognizable injury by pointing to alleged allergic reactions suffered by other hypothetical consumers. On that basis alone, the statutory consumer and common law fraud claims should be dismissed.

**B.      The Amended Complaint Fails To Plead A Specific Misrepresentation Upon Which Plaintiffs Relied Or That Caused Their Purchases.**

Plaintiffs' common law fraud claim must be pleaded with particularity under Rule 9(b), as do their statutory consumer fraud claims because they sound in fraudulent and deceptive

conduct.[6] *See O'Connor*, 477 F. Supp. 3d at 718. The Amended Complaint fails to satisfy that heightened pleading standard.

"To satisfy Rule 9(b), Plaintiff must identify a *specific* misrepresentation that he saw, the date he saw it, *and where he saw it*." *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 738 (N.D. Ill. 2015) (emphasis added). Rule 9(b), therefore, bars Plaintiffs from relying on general allegations about Unilever's purported misrepresentations, without pleading with precision that they actually saw those statements, where they saw them, and that the statement induced them to purchase the product.[7] *See Shailja Gandhi Revocable Tr. v. Sitara Cap. Mgmt., LLC*, No. 09 C 3141, 2011 WL 814647, at *5 (N.D. Ill. Feb. 25, 2011) ("To show proximate causation [under the ICFA], the plaintiffs must set forth individualized allegations that they actually saw and were deceived by the statements at issue."); *see, e.g., Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (affirming dismissal of ICFA claim, stating plaintiff's "failure to cite a *specific* deceptive representation that caused her to pay for something she did not receive is particularly problematic in light of Rule 9(b)'s heightened standard") (emphasis

---

[6] The gravamen of the Amended Complaint is Defendants' alleged false and deceptive marketing. (*See, e.g.*, Am. Compl., ¶¶ 1-8, 79-111.) Plaintiffs cannot end-run Rule 9(b) by sprinkling conclusory references to "unfair" acts. (*See, e.g., id.* ¶¶ 217, 256, 283-85); *see Camasta*, 761 F.3d at 737 ("Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [plaintiff's] allegations are entirely grounded in fraud under the ICFA."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011) (same); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (same).

[7] *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 393 F. Supp. 3d at 756-57 (finding that the complaint did not plead causation or reliance, as applicable, under the statutory consumer fraud laws of, *inter alia*, California, Florida, New Jersey, New York, Michigan, and Illinois, because it did not allege that the plaintiffs saw the representation before purchase); *Webb v. Volvo Cars of N.A., LLC*, No. CV 13-2394, 2018 WL 1470470, at *6-7 n.6 (E.D. Pa. Mar. 26, 2018) (Pennsylvania law) (noting that "[j]ustifiable reliance is also an element" of a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and dismissing claim because plaintiff failed to allege specific advertisement upon which she relied); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012) (Ohio law) (same); *Kerr v. Lambert*, No. 03-19-00359-CV, 2020 WL 6266005, at *3 (Tex. App. Oct. 23, 2020) (noting that claim under the Texas Deceptive Trade Practices Consumer Protection Act requires detrimental reliance).

-18-

added); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) (dismissing ICFA claim where complaint's "generalized allegations fail[ed] to describe with particularity the specific misrepresentations on which Plaintiff allegedly relied[,]" and did not identify 'the time, place, and content of the misrepresentation,' or 'the method by which the misrepresentation was communicated to the plaintiff'").

In the general section of their Amended Complaint, Plaintiffs identify a hodgepodge of statements supposedly found in various sources. For instance, the Amended Complaint refers to alleged statements on Unilever's website, including "that the Products contain a formula intended to smooth hair, add softness and shine, and prevent frizzing and tangling; and that the Products 'deeply nourish,' 'gently cleanse,' and 'repair hair'" (Am. Compl., ¶ 37 n. 28, 29; *id.* ¶ 91), or alleged statements about the safety of DMDM hydantoin (*id.* ¶ 58.) The Amended Complaint also refers to alleged warranties on product labels. (*Id.* ¶ 68.) The problem for Plaintiffs, however, is that the Amended Complaint fails to allege, with specificity, that they themselves reviewed, considered, or relied upon any of these specific statements before making their purchases.

The Amended Complaint fails to even identify what TRESemmé product each Plaintiff supposedly purchased, instead lumping the broad portfolio of the TRESemmé brand into an all-encompassing definition of "the Products" and leaving Unilever to guess at what any Plaintiff allegedly purchased.[8] (*Id.*, ¶¶ 1, 115, 122, 129, 136, 143,150157, 164, 171, 178.) Certainly, Plaintiffs cannot complain of TRESemmé products they never purchased or used and Unilever is entitled to know which TRESemmé products are at issue. Worse still, not a single Plaintiff

---

[8] The TRESemmé line includes a large number of individual shampoos, conditioners, and other hair-care products. *See* https://www.tresemme.com/us/en/home.html# (last visited June 29, 2021).

-19-

alleges that he or she reviewed Unilever's website before making any purchase.[9]  (*Id.*, ¶¶ 114-183); *see O'Connor*, 477 F. Supp. 3d at 719 (complaint failed to comply with Rule 9 where plaintiff did not allege he reviewed website before leasing vehicle).  And, while the Amended Complaint alleges in conclusory fashion that Plaintiffs reviewed product labels (Am. Compl., ¶¶ 116-17, 123-24, 130-31, 137, 144-45, 151-52,157-58, 164-65, 172-73, 179-80), it does not identify any specific statement Plaintiffs actually read on those labels.  Even in its so-called "Fed. R. Civ. P. 9(b) Allegations" section, the Amended Complaint fails to identify the *specific* false or misleading statement that each Plaintiff supposedly read.  (*Id.*, ¶ 193.)  Such conclusory allegations do not pass muster under Rule 9(b).  *See, e.g.*, *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("stating that she visited the website is not sufficient to claim that she saw something that deceived her. It does not provide the what or how of the fraud, as Rule 9(b) requires.").

Plaintiffs cannot bypass their obligation to plausibly plead that they actually reviewed and relied upon specific representations in making purchases (or that any specific representation actually caused their purchases), by a general discussion about Unilever's marketing untethered to any Plaintiff's experience.  *See, e.g.*, *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.,* No. 05 C 2623, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) ("Although specific advertisements are mentioned in the section of the complaint titled 'Substantive Allegations,' these plaintiffs do not allege that they saw any of these specific advertisements.").

---

[9] Regardless, Unilever disclosed on its website that "a few people can be allergic to a few of these ingredients."  https://www.unileverusa.com/brands/whats-in-our-products/your-ingredient-questions-answered/preservatives.html (last visited July 1, 2021); *see, e.g., Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 937-39 (7th Cir. 2001) (affirming dismissal of claim under ICFA because, *inter alia*, information on website "would dispel any" alleged deception, even though the complaint did  "not say whether [plaintiff] ever visited the web site").

### C. The Amended Complaint Fails to Plead Any Deceptive Act or Practice.

Truthful statements regarding a product's benefits are not rendered false or misleading in violation of consumer protection law by a manufacturer's alleged failure to warn consumers that they may be allergic to an ingredient, especially when that ingredient is itself accurately disclosed on the product's label. Any other rule would mean that consumer fraud law requires all manufacturers to label all of their products with warnings of all potential allergies to already-disclosed ingredients. Where, as here, the ingredients are accurately disclosed on a label, the consumer can read the label and decide whether to buy the product. And, most significant here, statements of the product's benefits – *e.g.*, that a shampoo will "'deeply nourish,' 'gently cleanse[s],' and 'repair hair'" (Am. Compl., ¶ 37) – are truthfully stated for the vast majority of consumers who, like each of the Plaintiffs, used the products without incident, according to the Amended Complaint.

As a threshold matter, the Amended Complaint does not allege that the statements on the TRESemmé label and website are false or that consumers do not realize these benefits. *See Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740–41 (N.D. Ill. 2019) ("A statement or label cannot mislead unless it actually conveys untrue information about a product."). Nowhere in the Amended Complaint does it allege that the shampoos do not smooth, gently clean, deeply nourish, add shine to, or repair hair. Quite to the contrary, the Amended Complaint makes clear that many Plaintiffs used the shampoos over an extended period of years, evidently without any problems whatsoever. (Am. Compl., ¶¶ 136, 164, 171, 178.) In the absence of a false statement, the Amended Complaint's claims under state consumer fraud laws and for common law fraud fail as a matter of law and should be dismissed. *See, e.g., Baldwin*, 78 F. Supp. 3d at 738 ("Plaintiff's complaint also fails to satisfy Rule 9(b) because it does not plead with particularity how Defendants' alleged misrepresentations were false.").

A truthful statement of a product's benefit is not rendered misleading by a failure to warn of a potential allergic reaction to a disclosed ingredient. To the extent Plaintiffs argue otherwise, it is hornbook law that a product label or advertisement must contain false or misleading statements capable of deceiving a "reasonable" consumer and *not* deceiving only the idiosyncratic consumer. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (observing that, although state consumers fraud laws differ, they "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer"). By the same token, an alleged omission must be "material" to a "reasonable" consumer to be actionable. *See Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 939 (N.D. Ill. 2008) (the "test [for materiality] is an objective one"). As the Ninth Circuit explained, the possibility that "some few consumers" might be misled is not enough; instead, "the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)).

The vast majority of consumers have no allergy and will not be misled. Moreover, the presence of an allergen does not render Unilever's truthful statements deceptive to a *reasonable* consumer because Unilever accurately disclosed the ingredient on the product's labeling. That is to say, those few consumers with an allergy can see the ingredient's presence on the label and avoid purchasing the product. That, of course, is one of the prime reasons for identifying the ingredient on the label. *See Stemm*, 374 F. Supp. 3d at 739 ("Whether an act is deceptive must be evaluated 'in light of the totality of the information made available to the plaintiff.'") (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)); *see Bober*, 246 F.3d at 939

-22-

(same). And, for those consumers who are allergic to an ingredient but do not know it, a warning would be ineffective and, therefore, immaterial. [10]

The Amended Complaint relies heavily on *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893 (N.D. Ill. 2013), but that case had nothing to do with the alleged failure to warn about the presence of a potential allergen. *Reid* did not involve a shampoo product and the theory of the case did not center on allergies to DMDM hydantoin. To the contrary, *Reid* concerned the alleged presence of a chemical in a hair treatment, which was recalled by the time plaintiffs filed suit, that was intended to straighten hair for up to 30 days. Notably, the chemical at issue in *Reid* allegedly created a risk of adverse reactions to *all* consumers. *Id.* at 900-01, 905, 908, 915. Indeed, plaintiffs claimed that the defendant failed to warn that "hair loss would result under 'any and all circumstances[.]'" *Id.* at 917. Moreover, the plaintiffs in *Reid* alleged they suffered actual harm from using the hair treatment, unlike Plaintiffs here. *Id*. at 900-01.

**III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (COUNT XI).**

The Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") "does not provide a cause of action for damages – its only remedy is injunctive relief." *Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*, No. 04 C 3879, 2005 WL 433327, at \*10 (N.D. Ill. Feb. 22, 2005). To maintain an action for injunctive relief under UDTPA, Plaintiffs must allege that Unilever's "conduct will likely cause [them] harm in the future." *Camasta*, 761 F.3d at 740. As established above, Plaintiffs do not have standing to seek injunctive relief under Article III. By definition, therefore, Plaintiffs cannot maintain a claim under the UDTPA. Again, the Amended Complaint

---

[10] Relatedly, without an allegation that Plaintiffs are allergic to DMDM hydantoin, they cannot plausibly plead that the alleged failure to include a warning that some consumers could be allergic to that ingredient caused them actual damages, or that they relied on such an omission in purchasing the shampoos. That is yet another, independent basis to dismiss the claims for common fraud and statutory consumer fraud.

does not plead a likelihood of future harm (Am. Compl., ¶¶ 322-332), nor can it. Courts routinely reject claims under the UDTPA brought by consumers because, having claimed deceptive conduct, a reasonable consumer is unlikely to continue buying the product. *See, e.g,*, *Camasta*, 761 F.3d at 741 (affirming dismissal of UDTPA, stating: "Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."); *Reid,* 964 F. Supp. 2d at 918-19 (same). Therefore, the Court should dismiss the UDTPA claim.

## IV. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTY (COUNTS II AND III).

### A. The Amended Complaint Fails To Plead That The Shampoos Plaintiffs Purchased Did Not Perform As Allegedly Promised Or Were Not Fit For Their Intended Or Ordinary Purpose.

"To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin*, 78 F. Supp. 3d at 739 (internal quotation marks and citation omitted). To recover damages, a plaintiff must plausibly plead a breach or failure of a warranty and damages measured under the warranty. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015). If a plaintiff fails to plausibly plead that the goods purchased actually failed to conform to an alleged warranty, the claim fails. *See Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 320 (2007) ("If a seller delivers conforming goods, the warranty is satisfied. If the seller delivers nonconforming goods, the warranty is breached at that time."); *Dickie v. Cannondale Corp.*, No. 13-3889, 2016 WL 3765798, at *4 (Ill. Ct. App. 2016) ("If the goods fail to conform to the affirmations or promises, the seller may be held accountable for breach of warranty.") (citing *Weng v. Allison*, 287 Ill. App. 3d 535, 537 (1997)).

The Amended Complaint flunks this standard. As a threshold matter, the Amended Complaint does not plead that any alleged express warranties formed the basis of Plaintiffs' bargain. As established above, the Amended Complaint fails to allege that Plaintiffs ever saw any specific warranty (whether on a website, product label, or elsewhere) before they made their purchases; instead, and for each of the ten Plaintiffs, the Amended Complaint simply alleges that each reviewed unspecified "disclosures, warranties, and marketing materials. . . ." (Am. Compl., ¶¶ 117, 124. 131, 138, 145, 152, 159, 166, 173, 180.) But conclusions like "Plaintiff reviewed the warranty" are not enough under *Twombly*; instead, the Amended Complaint must plead *facts* to show what specific text each Plaintiff reviewed and comprised the purported warranty. On that basis alone, the breach of express warranty claim should be dismissed. *See, e.g.*, *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019) (noting "plaintiff has not alleged that she ever saw the statement on the website before making her purchase," and dismissing the claim because "plaintiff has failed to allege plausibly that the information on defendant's website was part of the basis of the bargain").[11] Furthermore, without specifying the statements they actually reviewed, Plaintiffs cannot plausibly plead reliance, which is an additional required element of warranty claims under Illinois, New York, Texas, Florida Michigan, Pennsylvania, and Ohio law.[12] For that reason too, Plaintiffs' claims fail.

---

[11] Like Illinois, the remaining jurisdictions at issue here require express warranties to be "part of the basis of the bargain," in order to be actionable. *See* Cal. Com. Code § 2313(1); Fla. Stat. Ann. § 672.313(1); Mich. Comp. Laws Ann. § 440.2313(1); N.J. Stat. Ann. § 12A:2A-313(1); N.Y. U.C.C. Law § 2-313(1) (McKinney); 13 Pa. Stat. and Cons. Stat. Ann. § 2313(a); Tex. Bus. & Com. Code Ann. § 2.313; Ohio Rev. Code Ann. § 1302.26(A).

[12] *See Regopoulos v. Waukegan P'Ship*, 240 Ill.App.3d 668, 674 (1992) (Illinois law) (plaintiff must actually rely on alleged warranty); *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018) (New York law) (same); *TEU Servs., Inc. v. Inventronics USA, Inc.*, No. SA-16-CV-01023-RCL, 2018 WL 3338217, at *11 (W.D. Tex. Feb. 5, 2018) (Texas law) (same); *Arcure v. Kellogg Co.*, No. 210CV192FTM36SPC, 2011 WL 13294631, at *5 (M.D. Fla. Mar. 29, 2011) (Florida law) (same); *Berg v. Invacare Corp.*, No. CV 17-12362, 2020 WL 8408966, at *2 (E.D. Mich. Feb. 25, 2020) (Michigan (continued…)

Even if the Amended Complaint plausibly pleaded that any express warranty formed the basis of Plaintiffs' bargain (and it does not), and even if Plaintiffs relied on that warranty when making their purchases, Plaintiffs' claims for breach of express warranty still would fail because the Amended Complaint does not plausibly plead a breach of that warranty. More bluntly stated, the Amended Complaint fails to allege any facts to show that any Plaintiff suffered an adverse reaction – and in the absence of such an allegation, there was no breach of warranty as to that Plaintiff. Having failed to plead that the products *they purchased* failed to conform to any alleged expressed warranty, Plaintiffs' claims fail as a matter of law and should be dismissed.

Plaintiffs' claim for breach of the implied warranty of merchantability fails for the same reason. To state such a claim, Plaintiffs must plead that the shampoos they purchased were not fit for their ordinary or intended purpose. *See* Cal. Com. Code § 2314(2)(c); Fla. Stat. Ann. § 672.314(2)(c); Mich. Comp. Laws Ann. § 440.2314(2)(c); Tex. Bus. & Com. Code Ann. § 2.314(b)(3); 810 Ill. Comp. Stat. 5/2-314(2)(c); N.J. Stat. Ann. § 12A:2-314(2)(c); N.Y. U.C.C. § 2-314 (2)(c) (McKinney); 13 Pa. Stat. and Cons. Stat. Ann. § 2314(b)(3); Ohio Rev. Code Ann. § 1302.27(B)(3). Again, the Amended Complaint does not plead that any shampoo Plaintiffs purchased failed to do what a shampoo is supposed to do; that is, wash and clean their hair. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d. 1012 (7th Cir. 2002) ("most states would not entertain" a warranty claim by a consumer whose product performed without incident, and who therefore got substantial use from the product); *Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, at *5 (N.D. Ill. June 16, 2017) (where complaint alleged lotion falsely stated it contained aloe vera, dismissing claim for breach of implied warranty of merchantability

---

law) (same); *Miller v. Heil Co.*, No. 3:20-CV-00091, 2021 WL 927943, at *3 (W.D. Pa. Mar. 11, 2021) (Pennsylvania law) (same); *Utter v. Peachtree Companies, Inc.*, No. 1:08CV767, 2010 WL 11635925, at *3 (S.D. Ohio Aug. 3, 2010) (Ohio law) (same).

because plaintiffs "fatally neglect to plead that the Gel failed to cool (or moisturize) their skin");

*Jasper v. Abbott Lab'ys, Inc.*, 834 F. Supp. 2d 766, 774 (N.D. Ill. 2011) (party cannot rely on the

experiences of others to establish breach of implied warranty).[13]  Plaintiffs received exactly what

they bargained for: shampoos that washed and cleaned their hair.  Therefore, Plaintiffs' claims

for breach of implied warranty should be dismissed.

### B.      The Amended Complaint Admits the Absence of Privity With Unilever, A Required Element In Most Jurisdictions.

Even if Plaintiffs could establish a breach of an express or implied warranty, the claims

still would fail because the Amended Complaint does not plead privity of contract between any

Plaintiffs and Unilever, which is a required element in most jurisdictions.  To the contrary, the

Amended Complaint admits that all ten Plaintiffs purchased the TRESemmé products from a

third-party retailer.  (Am. Compl., ¶¶ 115, 122, 129, 136, 143, 150, 157, 164, 171).  In that

admitted absence of privity, the Amended Complaint's claims for breach of express warranty

under Texas, New York, Florida, and Michigan law must be dismissed.[14]  For the same reason,

---

[13] *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.") (internal quotation marks and citation omitted); *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, No. 1:02CV00013, 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005) ("The great weight of authority from other jurisdictions indicates that a plaintiff has not suffered a present injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other, identical products."); *Am. Honda Motor Co. v. Superior Ct.*, 199 Cal. App. 4th 1367, 1375 (2011) (California law) ("A breach of warranty cannot result if the product operates as it was intended to and does not malfunction during its useful life."); *Holtec Int'l v. ARC Machines, Inc.*, 492 F. Supp. 3d 430, 445 (W.D. Pa. 2020) (Pennsylvania law) (same); *Hubbard v. Gen. Motors Corp.*, No. 95 CIV. 4362, 1996 WL 274018, at *3 (S.D.N.Y. May 22, 1996) (New York law) (same); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (Florida law) (same); *Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003) (same); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-56 (Tex. App. 2005) (Texas law) (same).

[14] *See Barragan v. Gen. Motors LLC*, No. 4:14-CV-93-DAE, 2015 WL 5734842, at *9, 13 (W.D. Tex. Sept. 30, 2015) (Texas law) (noting that, "[t]o recover for breach of express warranty, the plaintiff must be in privity with the manufacturer or seller of the product," and granting motion to dismiss because consumer did not buy car from manufacturer); *Manufacturers & Traders Tr. Co. v. Stone Conveyor, Inc.*, (continued…)

-27-

the claims for breach of the implied warranty of merchantability under Illinois, California, New York, Florida, and Ohio law must also be dismissed.[15]

## V. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT (COUNT V).

Finally, the Amended Complaint's failure to plead that any of the ten Plaintiffs themselves suffered an allergic reaction dooms its claims for unjust enrichment. In the absence of such allegations, each Plaintiff received the shampoo they bargained for and the Amended Complaint fails to plausibly plead any deceptive or inequitable conduct. Accordingly, the unjust enrichment claim cannot be sustained and should be dismissed. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d at 927 (citing authority applying, *inter alia*, Illinois, California, Michigan, and New York law); *see also Davis v. Fresh Mkt., Inc.*, No. 1:19-CV-24245-PCH, 2020 WL 3489369, at *3 (S.D. Fla. June 26, 2020) (Florida law); *Webb v. Volvo Cars of N.A., LLC*, No. CV 13-2394, 2018 WL 1470470, at *11 (E.D. Pa. Mar. 26, 2018) (Pennsylvania law); *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1059 (N.D. Ohio 2014)

---

458 N.Y.S.2d 116, 117 (N.Y. App. Div. 1982) (New York law) (same); *Vision Pharma, LLC v. Sterling Pharm. Servs., LLC*, No. 218CV500FTM99MRM, 2019 WL 1532534, at *6 (M.D. Fla. Apr. 9, 2019) (Florida law) (privity required); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (Florida law) (dismissing claim); *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) (Michigan law) (same)

[15] *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (Illinois law) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty."); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (Illinois law) (dismissing claim for breach of implied warranty against manufacture with prejudice, because there can be no privity between consumer who bought product from retailer, not manufacturer); *Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2012 WL 5381236, at *8 (N.D. Ill. Oct. 31, 2012) (Illinois law) (same); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1160 (S.D. Cal. 2015) (California law) (dismissing claim); *Manufacturers and Traders Tr. Co.,* 458 N.Y.S.2d at 117 (New York law) (same); *Soule v. Norton*, 750 N.Y.S.2d 692, 695 (N.Y. App. Div. 2002) (New York law) (same); *Vision Pharma,* 2019 WL 1532534, at *6 (Florida law) (privity required); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (Florida law) (dismissing claim); *Smith v. Hartz Mountain Corp.*, No. 3:12-CV-00662, 2012 WL 5451726, at *5 (N.D. Ohio Nov. 7, 2012) (Ohio law) (same); *Oblak v. Integra Lifesciences Corp.*, No. 1:16 CV 1832, 2017 WL 1831098, at *3 (N.D. Ohio May 4, 2017) (Ohio law) (same).

(Ohio law); *In re Riddell Concussion Reduction Litig.*, 77 F.Supp.3d 422, 439–40 (D.N.J. 2015) (New Jersey law). In any event, unjust enrichment is not an independent cause of action under Texas law. *See Taylor v. Trevino*, No. 3:20-CV-0393-D, 2021 WL 347566, at \*3 (N.D. Tex. Feb. 2, 2021) (dismissing claim).

## CONCLUSION

Plaintiffs have now had multiple opportunities to plead their case, as the Amended Complaint superseded and replaced several earlier complaints filed as separate actions. Because the Amended Complaint fails to plead either Article III standing or a claim for relief, it should therefore be dismissed, with prejudice.

Dated: July 6, 2021

By: */s/ Gavin J. Rooney*
Gavin J. Rooney
Reynold Lambert
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212.419.5853

By: */s/ Claire C. Kossmann*
**FOLEY & MANSFIELD, PLLP**
Claire C. Kossmann
70 West Madison Street, Suite 3000
Chicago, IL 60602
312-254-3810
312-254-3801 (Fax)
ckossmann@foleymansfield.com

*Attorneys for Defendants*

-29-