UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY CASTILLO, SHANNON KEENER, ROBYN LIPETZ, ALEXANDRA ARROYO, GUSTAVO FLORES, NANCY JONES, ZAMARA COLON, KRISTI KELLER, HOLLIE PARRISH, and CORIN FIONDELLA, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | 20 C 6786<br><br>Judge Gary Feinerman |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNILEVER UNITED STATES, INC., and CONOPCO, INC., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Emily Castillo and several other individuals bring this putative class action under the diversity jurisdiction against Unilever United States, Inc. and Conopco, Inc. (together, "Unilever"), alleging that certain Unilever hair products contained an unsafe chemical with undisclosed risks. Doc. 33. Unilever moves under Civil Rules 12(b)(1) and 12(b)(6) to dismiss for lack of standing and failure to state a claim, respectively. Doc. 37. The motion is granted. Plaintiffs' claims are dismissed for lack of standing insofar as they seek injunctive relief and otherwise are dismissed for failure to state a claim.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts

"are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). The same principles govern Unilever's Rule 12(b)(1) motion because it presents only a facial challenge to Plaintiffs' standing. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) ("For facial standing challenges, as here, we employ the familiar 'plausibility' requirement—the same standard used to evaluate challenges to claims under Rule 12(b)(6)."). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Unilever designs, formulates, produces, manufactures, sells, and distributes TRESemmé brand hair products. Doc. 33 at ¶¶ 2, 13. Certain TRESemmé shampoos and conditioners contain DMDM hydantoin, a formaldehyde-releasing preservative, as an ingredient. *Id.* at ¶¶ 19, 25. People allergic to DMDM hydantoin can experience adverse reactions—including itchiness, rashes, dermatitis, hair brittleness, and hair loss—when exposed to it. *Id.* at ¶¶ 5, 30-33, 39, 53. TRESemmé products containing DMDM hydantoin thus are "dangerous," "unfit for sale," "toxic," and "defective." *Id.* at ¶¶ 75, 83, 257. Despite its knowledge of that ingredient's risks, Unilever continued to use it and misrepresented that its DMDM hydantoin-containing products were safe and effective. *Id.* at ¶¶ 6, 41, 46. Unilever further represented that its products safely smoothed, nourished, cleansed, and repaired hair. *Id.* at ¶¶ 16, 37, 68, 88, 91, 96, 98.

Plaintiffs are consumers who purchased and used TRESemmé products containing DMDM hydantoin in California, Florida, Illinois, Michigan, New Jersey, New York, Ohio, Pennsylvania, and Texas. *Id.* at ¶ 113. Plaintiffs allege that, had they been aware of the risks of DMDM hydantoin, they would not have purchased the products or would have paid less for

them.  *Id*. at ¶¶ 98, 111, 117, 125, 132, 139, 146, 153, 160, 167, 174, 181, 228, 249, 303, 342, 388, 410, 413, 435.  Plaintiffs do *not* allege that they are allergic to DMDM hydantoin or that they suffered adverse effects from using products containing that ingredient.  *Id*. at ¶¶ 114-183. Nor do Plaintiffs allege that the TRESemmé products they used failed to smooth, nourish, cleanse, or repair *their* hair.  *Ibid*.  Instead, they allege that they "did not receive the benefit of their bargain" because those products contained DMDM hydantoin and thus "were unsafe, cause[d] scalp irritation and hair loss, and d[id] not safely smooth, nourish, cleanse, and/or repair hair."  *Id*. at ¶ 100.

Before Plaintiffs filed the operative complaint, Unilever ceased using DMDM hydantoin in its TRESemmé products and now uses preservatives that do not release formaldehyde.  *Id*. at ¶ 48.  Still, Unilever has not recalled its DMDM hydantoin-containing TRESemmé products that it previously distributed.  *Id*. at ¶¶ 49, 60.

## Discussion

The complaint purports to bring state law claims for statutory and common law fraud, breach of express and implied warranty, and unjust enrichment.  *Id*. at ¶¶ 211-436.  In addition to monetary relief, Plaintiff seek an injunction forbidding Unilever from deceiving consumers about the risks of DMDM hydantoin, requiring it to disclose those risks, and mandating that it recall TRESemmé products with DMDM hydantoin.  *Id*. at pp. 85-86.

## I.     Article III Standing

Unilever contends that the complaint fails to plead facts showing that Plaintiffs have Article III standing for either monetary or injunctive relief.  Doc. 37 at 18-27.  Because Article III standing is jurisdictional, the court must consider it before reaching the merits.  *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019).  "To establish standing, a plaintiff has the burden to establish that he has (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (internal quotation marks omitted). "At the pleading stage, the standing inquiry asks whether the complaint clearly alleges facts demonstrating each element in the doctrinal test." *Ibid.* (internal quotation marks and alterations omitted). "[A] plaintiff must have standing for each form of relief sought." *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018).

The court declines Plaintiffs' suggestion to wait until after class certification to address standing. Doc. 41 at 23 n.10. Jurisdiction over a putative class action depends on the named plaintiffs' standing. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009) ("*Before* a class is certified, … the named plaintiff must have standing, because at that stage no one else has a legally protected interest in maintaining the suit."); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification … ."). Plaintiffs' standing therefore is "an antecedent legal issue" that must be resolved at the outset of the suit. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (evaluating the named plaintiff's Article III standing before addressing class certification).

## A. Monetary Relief

Plaintiffs have Article III standing to seek monetary relief. Although they experienced no allergic reaction from the DMDM hydantoin in TRESemmé products, Plaintiffs do allege financial injuries. Specifically, Plaintiffs claim that they purchased TRESemmé products worth less than what they paid because the products contained DMDM hydantoin, and that they received something different—and less valuable—than what they were promised because the

4

products' labels misleadingly touted the products' benefits while omitting DMDM hydantoin's risks. Doc. 33 at ¶¶ 50, 100, 303, 342, 400, 413.

Under the principles set forth in *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), those allegations suffice to establish standing. The plaintiffs in *Aqua Dots* sued the manufacturer and distributors of a children's toy consisting of beads that could be fused together to create designs. *Id*. at 749. When swallowed, a chemical in the beads metabolized into gamma-hydroxybutyric acid, commonly known as the "date rape" drug. *Ibid*. Children who swallowed a large number of beads became sick, and some fell into a coma. *Id*. at 749-50. The plaintiffs, however, were not physically injured children or their parents, but instead were the parents of children who suffered no physical injury. *Id*. at 750. The Seventh Circuit nonetheless held that the plaintiffs had Article III standing. As the court explained, the fact that the plaintiffs "did not suffer physical injury, … [did] not mean that they were uninjured. The plaintiffs' loss [wa]s financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing." *Id*. at 751; *see also United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 686 (1973) (noting that "those who could show economic harm" have standing) (internal quotation marks omitted).

The same result obtains here. Although Plaintiffs do not allege that they suffered physical injury, they do allege a financial loss analogous to that alleged in *Aqua Dots*—specifically, that they would not have bought the TRESemmé products, or would have paid less for them, had they known of the alleged defects caused by the presence of DMDM hydantoin. Doc. 33 at ¶¶ 111, 258, 303, 317, 342, 410, 413. At the pleading stage, that is enough to establish standing to seek a monetary remedy. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (noting that *Aqua Dots* applies "where the product itself was

defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect"); *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 918-19 (N.D. Ill. 2017) (collecting cases applying *Aqua Dots* to similar claims), *rev'd on other grounds sub nom. Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468 (7th Cir. 2020).

Pressing the contrary result, Unilever insists that DMDM hydantoin is safe. Doc. 37 at 13-14, 22-24. Maybe so, but at the pleading stage, the court must accept Plaintiffs' allegations that DMDM hydantoin, and thus the TRESemmé products containing that ingredient, are unsafe. *See Prairie Rivers Network*, 2 F.4th at 1008 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotation marks and alteration omitted); *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 642 (7th Cir. 2015) ("At the pleading stage a plaintiff need only allege, not prove, facts establishing standing."). Accordingly, Plaintiffs allege a financial injury in fact—one that is concrete and particularized—sufficient to predicate standing to pursue a monetary remedy. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015) ("In some situations, we have held that financial injury in the form of an overcharge can support Article III standing.") (citing *Aqua Dots*, 654 F.3d at 751).

## B.     Injunctive Relief

"Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief … ." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Rather, a plaintiff seeking injunctive relief must "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (internal quotation marks omitted); *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190,

2210 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). Plaintiffs fail to show that they face such a risk.

Because Plaintiffs are aware of the presence and potential effects of DMDM hydantoin in TRESemmé shampoos and conditioners, they face no future risks from those products. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) (holding that a plaintiff who had become aware of the defendant's allegedly deceptive practices "is not likely to be harmed by the practices in the future," and thus could not obtain an injunction); *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (St. Eve, J.) ("*Camasta* dealt with Article III standing."). This is particularly so because Plaintiffs disclaim any intent to purchase DMDM hydantoin-containing Unilever products in the future. Doc. 41 at 22-23. And if Plaintiffs never again purchase those products, they face no risk (either physical or financial) from the presence of DMDM hydantoin in those products or from Unilever's allegedly inadequate warnings regarding that ingredient. *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 701-03 (N.D. Ill. 2020) ("Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived, they cannot meet the standing requirements for injunctive relief claims.") (citation omitted). Plaintiffs therefore allege no real and immediate threat of future injury.

That absent putative class members might be unaware of the DMDM hydantoin in TRESemmé products—and thus continue to face risks from any unrecalled products—does not alter that conclusion. The reason is plain: "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that

they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (internal quotation marks and alteration omitted); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (holding that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members," as "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs") (citation omitted). Because Plaintiffs fail to plausibly allege a risk of an imminent injury to themselves, they lack standing to seek injunctive relief for either themselves or unnamed class members.

Plaintiffs argue that if they lack standing to pursue injunctive relief, then no one will have standing, thereby undermining the efficacy of consumer protection laws. Doc. 41 at 22-23. That argument fails for at least two reasons. As initial matter, there may be other judicial avenues for pursuing injunctive relief against Unilever. *See Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 858 (N.D. Ill. 2021) (noting that Article III standing "does not constrain *state*-court jurisdiction," and that competitors or a state attorney general might be able to obtain an injunction even if consumers did not have standing to seek an injunction in federal court). In any event, even if no one has standing to seek an injunction, the Supreme Court "has long rejected that kind of argument for Article III standing." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020); *see Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982) ("[T]he assumption that if [the plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing.") (citation omitted).

Accordingly, Plaintiffs' claims are dismissed for lack of subject matter jurisdiction to the extent that they seek injunctive relief.

II.     **Merits**

A.     **Fraud and Unjust Enrichment**

Turning to the merits, Plaintiffs' statutory and common law fraud claims fail for lack of injury.  Although their alleged financial injury establishes Article III standing under *Aqua Dots*, Plaintiffs still must show that the alleged "injuries [are] compensable, as a matter of state law," to avoid dismissal on the merits.  *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018).  Neither party suggests that this question turns on which State's law applies, Doc. 37 at 27-28 & n.5; Doc. 41 at 23-25, so the court will treat Illinois law as representative. *See Ry. Express Agency, Inc. v. Super Scale Models, Ltd.*, 934 F.2d 135, 139 (7th Cir. 1991) ("Where the law of the two states is essentially the same, we apply the law of the forum state.").

Illinois "ha[s] long considered an actual injury to be an essential element of fraud." *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1056 (Ill. 2020); *see Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) ("To bring a private right of action under [the Illinois Consumer Fraud and Deceptive Business Practices Act], actual damage to the plaintiff must be alleged.").  As noted, Plaintiffs do not allege that they suffered any adverse reaction from using TRESemmé products containing DMDM hydantoin; instead, they allege only that they "did not get what they bargained for as the Products did not work as Unilever promised."  Doc. 41 at 24 (citing Doc. 33 at ¶¶ 70, 75, 87, 100).

The flaw in Plaintiffs' argument is that *they* received the benefit of the bargain: for them, "[i]t simply made no difference" that DMDM hydantoin was present in the TRESemmé products they purchased.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 859 (Ill. 2005) (holding that the plaintiff suffered no actual damage, and thus had no viable statutory fraud claim, because the product he received had "the same value" it would have had if the defendant's allegedly fraudulent statement had been true).  Although *other* purchasers suffered adverse

reactions from using TRESemmé products, Doc. 33 at ¶ 75, Plaintiffs did not. Having failed to allege that the products they purchased failed to work as advertised for *them*, Plaintiffs' fraud claims must be dismissed on the merits. *See Gredell v. Wyeth Labs., Inc.*, 854 N.E.2d 752, 757 (Ill. App. 2006) ("[I]f plaintiff admitted getting relief from use of the drugs and could not otherwise show the drugs were ineffective, he has suffered no actionable damage."); *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) ("In cases where the plaintiff's claim of financial injury under the [Illinois Consumer Fraud and Deceptive Business Practices Act] has been upheld as the basis for damages, the complaint also alleged that the plaintiff experienced the product not working."); *cf. Bonahoom v. Staples, Inc.*, 2021 WL 1020986, at *6 (N.D. Ill. Mar. 17, 2021) (holding that the plaintiff alleged actual damages, and thus could pursue a statutory fraud claim, because he "unequivocally alleged" that the product he purchased "did not work as advertised" for him).

Plaintiffs' conclusory allegation that they "did not receive the benefit of their bargain," Doc. 33 at ¶ 100, does not save their fraud claims from dismissal. As the Supreme Court has explained, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted). In alleging that Plaintiffs did not receive the benefit of the bargain, the complaint merely restates the legal measure of fraud damages. *See Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 758-59 (Ill. App. 2013) ("Damages for fraud are typically calculated using the benefit-of-the-bargain rule, where the plaintiff's recovery is limited to an amount needed to compensate for the loss occasioned by the fraud."). Thus, the complaint's legal conclusion that

Plaintiffs were deprived of the benefit of their bargain is not entitled to the assumption of truth afforded factual allegations on a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). And with that legal conclusion set aside, the complaint does not allege facts suggesting that Plaintiffs suffered any actual injury or damage attributable to Unilever's alleged fraud.

Given the failure of Plaintiffs' fraud claims, their unjust enrichment claims necessarily fail as well. Doc. 41 at 38 (Plaintiffs acknowledging that their unjust enrichment claim turns on the same alleged "misrepresentations and deception" that "led to [their] being harmed"); *see Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

### B.      Breach of Warranty

The same result holds for Plaintiffs' breach of express and implied warranty claims. Although resolution of some warranty issues may require applying a particular State's law, the parties do not suggest that compliance with an express warranty (for express warranty claims) or injury (for implied warranty claims) are among them. Doc. 37 at 35-38; Doc. 41 at 32-35. So, the court's analysis of those elements of Plaintiffs' warranty claims is uniform regardless of which State's law governs.

Plaintiffs allege that Unilever warranted that its TRESemmé products "contain a formula intended to smooth hair, add softness and shine, and prevent frizzing and tangling; and that the Products 'deeply nourish,' 'gently cleanse,' and 'repair hair.'" Doc. 33 at ¶ 37. Even assuming those statements qualify as express warranties, the complaint does not allege that Plaintiffs

themselves (as opposed to other purchasers) received a product that failed to perform according to those specifications. It follows that Plaintiffs do not state a breach of express warranty claim. *See Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007) ("If a seller delivers conforming goods, the warranty is satisfied."); *Cont'l Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 91 n.3 (7th Cir. 1985) (Illinois law) (holding that a breach of warranty claim failed where the goods "conformed to the warranties"). The implied warranty claims fare no better, as the products Plaintiffs purchased functioned properly for them and thus caused them no actual injury as a matter of state law. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (noting that "most states would not entertain" a suit alleging a breach of the implied warranty of merchantability by consumers who were not injured, reasoning that "[i]f tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation"); *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725-26 (N.D. Ill. 2021) ("To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that … the plaintiff suffered damages as a result of the defective goods.") (internal quotation marks omitted); *Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 774 (N.D. Ill. 2011) (holding that a plaintiff alleging breach of an implied warranty "cannot rely" on other purchasers' experiences "to claim that she did not receive the benefit of the bargain").

## Conclusion

Unilever's motion to dismiss is granted. Plaintiffs' claims are dismissed for want of subject matter jurisdiction insofar as they seek injunctive relief. Plaintiffs' claims are dismissed on the merits without prejudice to repleading insofar as they seek monetary relief. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)

("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). Plaintiffs have until March 30, 2022, to file an amended consolidated complaint. If Plaintiffs do not replead, the dismissal without prejudice of their claims for damages relief will convert automatically to a with-prejudice dismissal. If Plaintiffs replead, Defendants shall file a responsive pleading by April 20, 2022.

March 9, 2022

_____
United States District Judge

13