**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| EMILY CASTILLO, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Case Number: 1:20-cv-06786 |
| UNILEVER UNITED STATES, INC., and | : | |
| CONOPCO, INC. d/b/a UNILEVER | : | |
| HOME & PERSONAL CARE USA, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

**FOLEY & MANSFIELD, PLLP**
70 West Madison Street, Suite 3000
Chicago, IL 60602
312-254-3810

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212.419.5853

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

STATEMENT OF THE ALLEGATIONS .............................................................................2

    A.    DMDM Hydantoin Is a Common Preservative. .......................................................2

    B.    Plaintiffs' Repeated Failure to Plead Actual Damages............................................3

        1.    The First Amended Complaint ......................................................................3

        2.    The Second Amended Complaint ..................................................................5

LEGAL STANDARD.............................................................................................................7

ARGUMENT ..........................................................................................................................9

I.    THE SECOND AMENDED COMPLAINT STILL FAILS TO PLEAD AN ACTUAL INJURY SUFFICIENT TO SUPPORT ANY OF ITS CLAIMS. ...................................................................................................................9

II.    THE SECOND AMENDED COMPLAINT FAILS TO PLEAD A SPECIFIC MISREPRESENTATION UPON WHICH PLAINTIFFS RELIED OR THAT CAUSED THEIR PURCHASES ......................................12

    A.    The Second Amended Complaint Does Not Plead a False Statement...................................................................................................12

    B.    The Second Amended Complaint Fails the Test of Rule 9(b). ..............................15

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (COUNT XI)................................................................................................18

IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTY (COUNTS II AND III)..................................................................................................................18

    A.    The Amended Complaint Fails To Plead That The Shampoos Plaintiffs Purchased Did Not Perform As Allegedly Promised Or Were Not Fit For Their Intended Or Ordinary Purpose.........................................18

    B.    The Amended Complaint Admits the Absence of Privity With Unilever, A Required Element In Most Jurisdictions............................................21

V.      THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT (COUNT V). ............................................................22

CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
393 F. Supp. 3d at 756-57 ..................................................................................................15

*Am. Honda Motor Co. v. Superior Ct.*,
199 Cal. App. 4th 1367 (2011) ...........................................................................................21

*Am. Mariculture, Inc. v. Syaqua Americas, Inc.*,
No. 2:20-CV-711-JES-MRM, 2021 WL 2315003 (M.D. Fla. June 7, 2021)
(Florida Deceptive and Unfair Trade Practices Act requires "actual damages") ................9, 10

*Arcure v. Kellogg Co.*,
No. 210CV192FTM36SPC, 2011 WL 13294631 (M.D. Fla. Mar. 29, 2011)........................20

*Ashcroft v. Iqbal*,
556 U.S. (2009). (Op. at 10) .........................................................................................4, 8

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ..........................................................................14, 15, 19

*Barragan v. Gen. Motors LLC*,
No. 4:14-CV-93-DAE, 2015 WL 5734842 (W.D. Tex. Sept. 30, 2015)................................22

*Berg v. Invacare Corp.*,
No. CV 17-12362, 2020 WL 8408966 (E.D. Mich. Feb. 25, 2020) .....................................20

*Berry v. City of Chicago*,
181 N.E.2d 679 (2020).......................................................................................................12

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ........................................................................................15, 17

*In re Bridgestone/Firestone, Inc.*,
288 F.3d. 1012 (7th Cir. 2002) ...........................................................................................21

*Briehl v. Gen. Motors Corp.*,
172 F.3d 623 (8th Cir. 1999) ...........................................................................................9, 10

*Brisson v. Ford Motor Co.*,
349 F. App'x 433 (11th Cir. 2009) ......................................................................................22

*Bussie v. Am. Sec. Ins. Co.*,
No. CV 20-3519, 2021 WL 2206282 (E.D. Pa. June 1, 2021) ..........................................9, 10

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ................................................................................8, 18

*In re Canon Cameras*,
  237 F.R.D. 357 (S.D.N.Y. 2006) ...........................................................................9, 10

*Cheng v. BMW of N. Am., LLC*,
  No. CV 12-09262 GAF SHX, 2013 WL 3940815 (C.D. Cal. July 26, 2013) .........................8

*Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*,
  No. 04 C 3879, 2005 WL 433327 (N.D. Ill. Feb. 22, 2005)................................................18

*Davis v. Fresh Mkt., Inc.*,
  No. 1:19-CV-24245-PCH, 2020 WL 3489369 (S.D. Fla. June 26, 2020)...............................23

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) .....................................................................................15

*Dickie v. Cannondale Corp.*,
  No. 13-3889, 2016 WL 3765798 (Ill. Ct. App. 2016) ............................................................19

*Dix v. Edelman Fin. Servs., LLC*,
  978 F.3d 507 (7th Cir. 2020) ......................................................................................8

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ....................................................................................14

*Everett v. TK-Taito, L.L.C.*,
  178 S.W.3d 844 (Tex. App. 2005)..........................................................................9, 10, 22

*Felix v. Ganley Chevrolet, Inc.*,
  145 Ohio St. 3d 329 (2015)......................................................................................9, 10

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
  No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017).........................................9, 10

*Frye v. L'Oreal USA Inc.*,
  583 F. Supp.2d 954 (N.D. Ill. 2008) ..............................................................................12

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
  No. 1:02CV00013, 2005 WL 6778678 (N.D. Ohio Feb. 22, 2005) .......................................21

*Gredell v. Wyeth Labs., Inc.*,
  854 N.E.2d 752 (Ill. App. 2006) ..................................................................................11

*Green v. G.M.C.*,
  No. A-2831-01T-5, 2003 WL 21730592
  (N.J. Super. Ct. App. Div. July 10, 2003)...........................................................................22

*Haywood v. Massage Envy Franchising, LLC,*
887 F.3d 329 (7th Cir. 2018) ..................................................................................16, 17

*Hill v. Hoover Co.,*
899 F. Supp. 2d 1259 (N.D. Fla. 2012)....................................................................22, 23

*Holtec Int'l v. ARC Machines, Inc.,*
492 F. Supp. 3d 430 (W.D. Pa. 2020)............................................................................22

*Hubbard v. Gen. Motors Corp.,*
No. 95 CIV. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)...................................22

*Ibarolla v. Nutrex Rsch., Inc.,*
No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) .......................................22

*Ibarrola v. Kind, LLC,*
83 F. Supp. 3d 751 (N.D. Ill. 2015) ...............................................................................19

*Jasper v. Abbott Lab'ys, Inc.,*
834 F. Supp. 2d 766 (N.D. Ill. 2011) .............................................................................21

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab.
Litig.,*
903 F.3d 278 (3d Cir. 2018)...........................................................................................11

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
365 Fed. App'x 830 (9th Cir. 2010) ............................................................................9, 10

*Jones v. TCF Nat'l Bank,*
No. 17-CV-13725, 2018 WL 4095036 (E.D. Mich. Aug. 28, 2018)...........................9, 10

*Kerr v. Lambert,*
No. 03-19-00359-CV, 2020 WL 6266005 (Tex. App. Oct. 23, 2020) ..........................15

*Lambert v. Dollar Gen. Corp.,*
No. 16 C 11319, 2017 WL 2619142 (N.D. Ill. June 16, 2017) .....................................21

*Lavie v. Procter & Gamble Co.,*
105 Cal.App.4th 496 (2003) ...........................................................................................14

*Lewakowski v. Unilever United States, Inc.,*
case no. 1:21-cv-03276 ....................................................................................................5

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.,*
865 F. Supp. 2d 529 (D.N.J. 2011) ..............................................................................9, 10

*Lodholtz v. York Risk Servs. Grp., Inc.,*
778 F.3d 635 (7th Cir. 2015) ............................................................................................8

*Manley v. Hain Celestial Grp., Inc.*,
   417 F. Supp. 3d 1114 (N.D. Ill. 2019) ...................................................................20, 22

*Manufacturers & Traders Tr. Co. v. Stone Conveyor, Inc.*,
   458 N.Y.S.2d 116 (N.Y. App. Div. 1982) ...............................................................22, 23

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) .......................................................................................13

*Miller v. Heil Co.*,
   No. 3:20-CV-00091, 2021 WL 927943 (W.D. Pa. Mar. 11, 2021) ...........................21

*Montgomery v. Kraft Foods Glob., Inc.*,
   822 F.3d 304 (6th Cir. 2016) .......................................................................................22

*Morlan v. Universal Guar. Life Ins. Co.*,
   298 F.3d 609 (7th Cir. 2002) .........................................................................................7

*Mydlach v. DaimlerChrysler Corp.*,
   226 Ill. 2d 307 (2007) ..................................................................................................19

*O'Connor v. Ford Motor Co.*,
   477 F. Supp. 3d 705 (N.D. Ill. 2020) .....................................................................16, 17

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) .......................................................................................21

*Oblak v. Integra Lifesciences Corp.*,
   No. 1:16 CV 1832, 2017 WL 1831098 (N.D. Ohio May 4, 2017) .............................23

*Pattie v. Coach, Inc.*,
   29 F. Supp. 3d 1051 (N.D. Ohio 2014) ........................................................................23

*Price v. Philip Morris, Inc.*,
   219 Ill. 2d 182 (2005) ..................................................................................................12

*Reed v. Palmer*,
   906 F.3d 540 (7th Cir. 2018) .........................................................................................8

*Reeves v. PharmaJet, Inc.*,
   846 F. Supp. 2d 791 (N.D. Ohio 2012) ........................................................................15

*Regopoulos v. Waukegan P'Ship*,
   240 Ill.App.3d 668 (1992) ............................................................................................20

*Reid v. Unilever United States, Inc.*,
   964 F. Supp.2d 893 (N.D. Ill. 2013) ..................................................................1, 12, 18

*In re Riddell Concussion Reduction Litig.*,
77 F.Supp.3d 422 (D.N.J. 2015) ...................................................................................23

*Riviera v. Wyeth-Ayerst Lab'ys*,
283 F.3d 315 (5th Cir. 2002) .......................................................................................11

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
No. 05 C 2623, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009).........................................18

*Shailja Gandhi Revocable Tr. v. Sitara Cap. Mgmt., LLC*,
No. 09 C 3141, 2011 WL 814647 (N.D. Ill. Feb. 25, 2011)........................................15

*Smith v. Hartz Mountain Corp.*,
No. 3:12-CV-00662, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012)............................23

*Soule v. Norton*,
750 N.Y.S.2d 692 (N.Y. App. Div. 2002) ...................................................................23

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) .........................................................................9, 10

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019) ........................................................................13, 15

*Tapia v. Davol, Inc.*,
116 F. Supp. 3d 1149 (S.D. Cal. 2015).........................................................................23

*Taylor v. Trevino*,
No. 3:20-CV-0393-D, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021) ...........................23

*Tears v. Boston Sci. Corp.*,
344 F. Supp. 3d 500 (S.D.N.Y. 2018)...........................................................................20

*TEU Servs., Inc. v. Inventronics USA, Inc.*,
No. SA-16-CV-01023-RCL, 2018 WL 3338217 (W.D. Tex. Feb. 5, 2018) ...............20

*Trujillo v. Apple Computer, Inc.*,
581 F. Supp. 2d 935 (N.D. Ill. 2008) ...........................................................................14

*Utter v. Peachtree Companies, Inc.*,
No. 1:08CV767, 2010 WL 11635925 (S.D. Ohio Aug. 3, 2010) .................................21

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ..........................................................................................9

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) ............................................................................................8

*Vision Pharma, LLC v. Sterling Pharm. Servs., LLC*,
  No. 218CV500FTM99MRM, 2019 WL 1532534 (M.D. Fla. Apr. 9, 2019) ....................22, 23

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) .....................................................................................................22

*Webb v. Volvo Cars of N.A., LLC*,
  No. CV 13-2394, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018)........................................15, 23

*Weng v. Allison*,
  287 Ill. App. 3d 535 (1997) .....................................................................................................19

*White v. VNA Homecare, Inc.*,
  No. CIV. 11-971-GPM, 2012 WL 1435432 (S.D. Ill. Apr. 25, 2012).......................................7

**STATUTES**

815 ILCS 505/10a ..............................................................................................................................9

Cal. Com. Code § 2313(1) ...............................................................................................................20

Cal. Com. Code § 2314(2)(c) ...........................................................................................................21

Fla. Stat. Ann. § 672.313(1) .............................................................................................................20

Fla. Stat. Ann. § 672.314(2)(c) .........................................................................................................21

Ill. Comp. Stat. 5/2-314(2)(c) ..........................................................................................................21

Mich. Comp. Laws Ann. § 440.2313(1) ...........................................................................................20

Mich. Comp. Laws Ann. § 440.2314(2)(c) .......................................................................................21

N.J. Stat. Ann. § 12A:2-314(2)(c)....................................................................................................21

N.J. Stat. Ann. § 12A:2A-313(1) ......................................................................................................20

N.Y. U.C.C. § 2-314 (2)(c) ..............................................................................................................21

Ohio Rev. Code Ann. § 1302.26(A) .................................................................................................20

Ohio Rev. Code Ann. § 1302.27(B)(3).............................................................................................21

Tex. Bus. & Com. Code Ann. § 2.313 ..............................................................................................20

Tex. Bus. & Com. Code Ann. § 2.314(b)(3).....................................................................................21

**RULES**

Fed. R. Civ. P. 8(a) ............................................................................................................8

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 7, 8

Fed. R. Civ. P. 9(b) ......................................................................................... passim

Fed. R. Civ. P.  23 ...........................................................................................................1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Unilever United States, Inc. and Conopco, Inc. (collectively, "Unilever"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint.

**INTRODUCTION**

By Memorandum Opinion and Order dated March 9, 2022, this Court dismissed the First Amended Complaint because Plaintiffs failed to plead actual injury or damage. The Court held that, while Plaintiffs alleged that they would not have bought the TRESemmé shampoo had they known that DMDM hydantoin caused hair loss or skin irritation in *other* consumers, Plaintiffs "failed to allege that the products they purchased failed to work as advertised for *them*. . . ." (Op. at 10 (emphasis in original).) In their attempt to cure that deficiency, however, Plaintiffs' Second Amended Complaint still does not allege that they themselves suffered hair loss, scalp irritation, or some other adverse event. Admittedly fearing that a claim based upon adverse events could never be certified as a class action under Rule 23 due to a predominance of individual issues,[1] Plaintiffs' Second Amended Complaint continues to eschew any allegation that the TRESemmé shampoo did not work for Plaintiffs.

Instead of alleging actual injury or damage to any Plaintiff in the form of hair loss or scalp irritation, the Second Amended Complaint repeats the same fatal mistake of the First Amended Complaint: it asserts, in conclusory terms, that Plaintiffs failed to receive the "benefit of the bargain" because the TRESemmé products included DMDM hydantoin as a preservative. The only substantive change is a wordsmithing one; previously, Plaintiffs alleged that DMDM hydantoin causes "hair loss and/or scalp irritation," while the Second Amended Complaint

_____

[1] (*See* Transcript of Sept. 13, 2021 Hearing, at 31:17-22, provided as Exhibit A to the Declaration of Gavin J. Rooney ("MR. SHUB: . . . This is not a case for personal injury for these plaintiffs. If it were, I don't think we'd be bringing this as a class action because we all know that would be a very difficult case to certify, and the class cannot consist of all people who were injured by the product. . . .").)

asserts that DMDM results in "repeated formaldehyde exposure." But Plaintiffs' pivot from "hair loss and/or scalp irritation" to "repeated formaldehyde exposure" fixes nothing. Plaintiffs still fail to allege any adverse reaction from using the TRESemmé product – whether in the form of alleged hair loss, scalp irritation, or otherwise – and have still failed to plead any facts to plausibly allege that they did not receive the benefit of their bargain. In addition, the Second Amended Complaint continues to suffer from other fatal defects that the Court did not reach on the prior motion to dismiss: it fails to allege any misrepresentation of fact and the warranty claims fail due to several issues, including the lack of privity. Accordingly, the Court should dismiss the Second Amended Complaint, this time with prejudice.

## STATEMENT OF THE ALLEGATIONS

Unilever manufactures and markets the TRESemmé brand of hair-care products, which includes a broad portfolio of shampoos, conditioners, and other products used to clean and style hair. The Second Amended Complaint alleges that, in the past, the TRESemmé products included DMDM hydantoin and, more recently, that Unilever reformulated the products to remove DMDM hydantoin. (Second Amended Complaint ("2d Am. Compl."), ¶¶ 5, 10.)

### A. DMDM Hydantoin Is a Common Preservative

DMDM hydantoin is a preservative commonly used in many consumer products sold in the United States. DMDM hydantoin is "one of the most popular formaldehyde donors," which means that, in order to preserve the product, it releases "small amounts of formaldehyde" over time. (*Id.*, ¶ 26-32.) DMDM hydantoin has been used in over 115 consumer products marketed in the United States, "most frequently in shampoos." (*Id.*, ¶ 33.) The United States Food and Drug Administration ("FDA") permits the use of DMDM hydantoin. (*Id.*, ¶ 34.) DMDM

hydantoin is, in fact, safe, as multiple scientific studies published in the public record demonstrate.[2]

By releasing the "small amounts" of formaldehyde over time, DMDM hydantoin prevents microbial growth in the product that might otherwise harm consumers. (*Id*., ¶ 28.) Unilever accurately disclosed the presence of DMDM hydantoin on the products' ingredient labeling, thereby allowing consumers to avoid the product if they wished to do so. (*Id.*, ¶ 48.)

**B.     Plaintiffs' Repeated Failure to Plead Actual Damage**

**1.     The First Amended Complaint**

The First Amended Complaint alleged that DMDM hydantoin, as a formaldehyde donor, exposed consumers to formaldehyde; that formaldehyde is classified as a carcinogen; and that some consumers allergic to DMDM hydantoin or formaldehyde may experience a hypersensitive reaction such as hair loss, skin irritation, and otherwise. (First Amended Complaint ("1st Am. Com.") [Dkt. No. 33], ¶¶ 17-33.) The First Amended Complaint described the potential allergic reactions to DMDM hydantoin (*id.*, ¶¶ 23-33), and presents extensive quotes from anonymous complaints of allergic reactions founds on the Internet (*id.*, ¶¶ 61-66). It then alleged that the TRESemmé products "are not safe to smooth, nourish, cleanse, and/or repair hair" due to the presence of the DMDM hydantoin, and that each Plaintiff "would not have purchased the Products had she known these representations were not true" and/or paid a so-called "price premium" for the product. (*Id*., ¶¶ 118, 413.) Notwithstanding its extensive discussion of allergies, skin irritation, and hair loss, however, the First Amended Complaint did not allege that

---

[2] *See* "Final Report on the Safety Assessment of DMDM Hydantoin," *Journal of the American College of Toxicology*, Vo1. 7, No. 3, p. 245 (1988) ("Based on the available data included in this report, it is concluded that DMDM Hydantoin is safe as a cosmetic ingredient in the present practices of use."); Annual Review of Cosmetic Ingredient Safety Assessments: 2005/2006, *International Journal of Toxicology*, 27 (Suppl. 1):77–142, 2008, pg. 105.

any of the ten named Plaintiffs themselves suffered any adverse reaction to DMDM hydantoin or were in fact allergic to that ingredient.

The Court granted Unilever's motion to dismiss the First Amended Complaint. [Dkt No. 55]. In its March 9, 2022 Memorandum Opinion and Order, the Court found that the First Amended Complaint failed to plead actual injury or damage and that this failure was fatal to all of Plaintiffs' claims. The Court noted that the First Amended Complaint did not allege that the Plaintiffs themselves suffered any "adverse effects," or allege that the TRESemmé shampoos "failed to smooth, nourish, cleanse, or repair *their* hair"; instead, the First Amended Complaint asserted that Plaintiffs "'did not receive the benefit of their bargain' because those products contained DMDM hydantoin and thus 'were unsafe, cause[d] scalp irritation and hair loss, and d[id] not safely smooth, nourish, cleanse, and/or repair hair.'" (Op. at 3, citing 1st Am. Com., ¶ 100.)

The Court found that these allegations failed to establish the actual damage required by the Illinois Consumer Fraud and Deceptive Practices Act and the similar injury elements of the other claims pleaded in the First Amended Complaint. The Court concluded that "[h]aving failed to allege that the products they purchased failed to work as advertised for *them*, Plaintiffs' fraud claims must be dismissed on the merits." (Op. at 10 (emphasis in original).) The Court further held that a conclusory assertion that Plaintiffs failed to receive the "benefit of their bargain" did not suggest a different result, because such "'threadbare recitals of the element of a cause of action'" do not suffice under *Ashcroft v. Iqbal*, 556 U.S., 662, 678 (2009). (*Id.*) The Court also dismissed Plaintiffs' claims seeking injunctive relief due to lack of Article III standing, because Plaintiffs faced no future risk from using the TRESemmé products. (Op. at 7.)

## 2. The Second Amended Complaint

Following the March 9, 2022 dismissal of the First Amended Complaint, Plaintiffs filed a Second Amended Complaint in an apparent effort to cure the deficiencies the Court found in their earlier pleading. Significantly, however, the new pleading still does not allege that any Plaintiff experienced skin irritation, hair loss, or any other adverse reaction, and did not, for that reason, receive the benefit of his or her bargain.[3] Instead, the Second Amended Complaint proceeds on the same fundamental theory as the First – that is, Plaintiffs would not have bought the product had they known that DMDM hydantoin rendered the product "unsafe."[4]

The Second Amended Complaint continues to allege that some subset of consumers other than Plaintiffs may experience a series of potential allergic reactions, including "'contact allergy,'" "dermatitis," "skin irritation," "itchiness," "red rashes on the skin," and "hair brittleness and hair loss," and further alleges that DMDM hydantoin is a "top allergen" that "'cause[s] the most allergic reaction from the use of cosmetic product.'" (*Id.*, ¶¶ 30, 35-36, 37-41). Similarly, the Second Amended Complaint continues to assert that Unilever has received "hundreds" of consumer complaints of such adverse reactions to DMDM hydantoin. (*Id.*, ¶¶ 68, 72-73). And, on those assertions, the Second Amended Complaint alleges that the TRESemmé product is "unsafe."

However, to suggest a different result this time around, the Second Amended Complaint simply substitutes the words *"repeated formaldehyde exposure"* for the risk of *"hair loss and/or*

---

[3] In fact, in the companion class action filed by the same Plaintiffs' counsel appearing here and alleging the same DMDM hydantoin-related claims with respect to Unilever's Suave product line, *Lewakowski v. Unilever United States, Inc.*, case no. 1:21-cv-03276, the plaintiffs filed an amended pleading *withdrawing* their allegations of alleged injury (*i.e.*, hair loss and scalp irritation), and replaced them with the same pattern allegations advanced here.

[4] For the Court's ease of reference, a blackline showing the edits made by the Second over the First Amended Complaint is provided with the Rooney Declaration, as Exhibit B.

*scalp irritation"* advanced by the First Amended Complaint. Indeed, the Second Amended Complaint makes that word substitution on no less than **_70_** separate occasions. (Rooney Decl., Ex. A, at ¶¶ 50, 54, 59, 60, 64-66, 70, 77, 81, 82, 88, 90-93, 95, 105, 109, 133, 145, 157, 169, 193, 205, 217, 229, 238, 242, 252b, 284, 294-95, 302, 346, 360, 373-74, 386, 387, 404, 414, 416, 427-28, 440-41, 476). Crucially, however, the only factual allegations advanced as to why TRESemmé is "unsafe" remains the same as that advanced last time: some subset of consumers other than Plaintiffs may experience a hypersensitive or allergic reaction, as the Second Amended Complaint continues to allege in paragraphs 30-41, 72-73, and elsewhere.[5]

Furthermore, the Second Amended Complaint fails to plead any new facts to show why Plaintiffs suffered an economic loss. Instead, the Second Amended Complaint advances the same series of rote allegations with respect to each of the ten Plaintiffs (while failing to even identify what specific TRESemmé product each Plaintiff supposedly purchased):

- "Plaintiff['s] use of the Products repeatedly exposed her to formaldehyde due to the Products' ingredients, namely DMDM hydantoin."

- "After using the Products as intended by Defendants, the Products did not safely smooth, cleanse, and/or repair Plaintiff's hair. Instead, Plaintiff [] was repeatedly exposed to formaldehyde."

- "Plaintiff [] reasonably expected that the Products she purchased would not cause repeated formaldehyde exposure."

- "Plaintiff would not have paid this money had she known that the Products were not safe to smooth, nourish, cleanse, and/or repair hair and/or would repeatedly expose her to formaldehyde."

---

[5] Citing to *Reid v. Unilever United States, Inc.*, 964 F. Supp.2d 893 (N.D. Ill. 2013), the Second Amended Complaint falsely asserts that Unilever recalled a Suave Keratin product "based on report of adverse reactions to formaldehyde exposure." (2d Am. Com., ¶ 50). In fact, the product at issue there was a hair-straightening chemical treatment, not a shampoo; the plaintiff complained of chemical burns from the product, which has nothing to do with a formaldehyde donor; and Unilever recalled the product "'because of potential consumer misunderstanding of the product's suitability for certain hair conditions.'" *Id*. at 901.

(*See, e.g.,* 2d Am. Compl., ¶¶ 130-135).

The Second Amended Complaint does not allege any facts to support its claim that the TRESemmé products do not "safely" cleanse hair – except, of course, for the potential allergic reactions which none of the Plaintiffs are alleged to have experienced. At no point does the Second Amended Complaint allege that the TRESemmé products did not, in fact, "smooth, nourish, cleanse or repair hair" for each Plaintiff. The Second Amended Complaint does not allege that Unilever made any false statements to promote sales of the TRESemmé products. It quotes statements made on the products' labels (*e.g.*, "'fight frizz, detangle knots, boost shine, add silky softness, protect against breakage, and tame pesky flyaways'" (*see id.*, ¶ 42), and on the Unilever website (*e.g.*, that the products would "nourish," "cleanse" or "repair" hair (*see id.*, ¶¶ 45, 94)). However, the Second Amended Complaint advances no allegations suggesting that any of these statements are themselves false or that the TRESemmé products do not, in fact, provide these benefits.

The Second Amended Complaint seeks monetary damages based upon a series of counts alleging violation of consumer fraud statutes, common-law fraud, unjust enrichment, and warranty claims. Apparently recognizing that the resident state of each Plaintiff will supply the substantive law, the Second Amended Complaint alleges claims under the laws of Illinois, Pennsylvania, New Jersey, California, Texas, New York, Florida, Ohio, and Michigan. Plaintiffs' request for damages includes disgorgement or restitution, as well as statutory damages under state consumer protection laws.

## LEGAL STANDARD

Although Plaintiffs purport to plead a putative class action, only the named Plaintiffs' alleged claims and factual allegations – and not those of unnamed class members – matter for purposes of a motion to dismiss under Rule 12(b)(6). *See White v. VNA Homecare, Inc.*, No.

CIV. 11-971-GPM, 2012 WL 1435432, at *1 n.1 (S.D. Ill. Apr. 25, 2012) (noting that, although plaintiff "seeks to represent a class, at this juncture the Court's concern is solely with whether [plaintiff], as the named Plaintiff in this case, has stated a claim upon which relief can be granted under federal and state law") (citing *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 616 (7th Cir. 2002)); *Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (same).

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 .S. 44, 70 2007)); *see* Fed. R. Civ. P. 8(a). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lodholtz*, 778 F.3d at 639 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Further, "legal conclusions and conclusory allegations . . . are not entitled to this presumption of truth." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (internal quotation marks and citations omitted, ellipsis in original).

In addition to satisfying Rule 8, a complaint sounding in fraud or deception – like the one here – must also comply with the heightened pleading standard of Rule 9(b) in order to survive a motion to dismiss. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)."). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The "circumstances constituting fraud" include the identity of the person who committed the fraud, the time, place, and content of the fraud, and the

method by which the fraud was communicated to the plaintiff. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where, and how" standard. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citations omitted).

## ARGUMENT

### I. THE SECOND AMENDED COMPLAINT FAILS TO PLEAD ACTUAL DAMAGE SUFFICIENT TO SUPPORT ANY OF ITS CLAIMS.

The Second Amended Complaint still fails to allege that any Plaintiff suffered an adverse event from using the TRESemmé hair care products. This remains fatal. A plaintiff suing under the Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA") must, among other things, plead and prove "actual damage" in order to state a claim. 815 ILCS 505/10a. Each of the other state consumer protection statutes cited by the Second Amended Complaint contains a similar provision requiring damage, injury, or an ascertainable loss.[6] Significantly, the threshold

---

[6] *See Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 Fed. App'x 830, 832 (9th Cir. 2010) ("If one gets the benefit of his bargain, he has no standing under" California's Unfair Competition Law); *Am. Mariculture, Inc. v. Syaqua Americas, Inc.*, No. 2:20-CV-711-JES-MRM, 2021 WL 2315003, at *4 (M.D. Fla. June 7, 2021) (Florida Deceptive and Unfair Trade Practices Act requires "actual damages"); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-56, 858 (Tex. App. 2005) (no standing under Texas' Deceptive Trade Practices Act where plaintiff received the "the benefit of their bargain; they were promised and they received seat belt buckles that latched and provided sufficient restraint."); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011) (New Jersey Consumer Fraud Act requires "ascertainable loss"); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *39 (N.D. Ill. Mar. 31, 2017) ("New York's consumer protection law also requires 'proof of malfunction.'") (quoting *In re Canon Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006)); *Bussie v. Am. Sec. Ins. Co.*, No. CV 20-3519, 2021 WL 2206282, at *9 (E.D. Pa. June 1, 2021) (Pennsylvania Unfair Trade Practices and Consumer Protection Law requires "ascertainable loss"); *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St. 3d 329, 335, 338 (2015) (Ohio Consumers Sales Protection Act requires "actual damages"); *Jones v. TCF Nat'l Bank*, No. 17-CV-13725, 2018 WL 4095036, at *4 (E.D. Mich. Aug. 28, 2018) (Michigan Consumer Protection Act requires "loss"); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (affirming dismissal of consumer fraud claims, among others, stating: "Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.").

for pleading actual damage is more stringent than that for establishing injury under Article III. *See Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016).

As this Court recognized in its March 9, 2022 Memorandum Opinion and Order, a plaintiff who complains that a product is not "safe" due to the adverse events experienced by others, but for whom the product works as promised and who suffers no adverse effects, has no actual damage entitling her to sue. *Spector*, 178 F. Supp. 3d at 672. The same principle applies under the other state consumer fraud statutes cited in the Second Amended Complaint; indeed, courts in those states commonly dismiss consumer fraud claims where the plaintiff received the product's promised benefit.[7] Many courts have refused to find even Article III standing (much less the actual damage or similar injury element required by a consumer fraud statute) where a plaintiff claimed that a product was unsafe or ineffective as to others, but where the plaintiff herself suffered no adverse consequences. For example, the Third Circuit in *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018), refused to find standing for purchasers of J&J baby powder where the plaintiffs claimed

---

[7] *See Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 Fed. App'x 830, 832 (9th Cir. 2010) ("If one gets the benefit of his bargain, he has no standing under" California's Unfair Competition Law); *Am. Mariculture, Inc. v. Syaqua Americas, Inc.*, No. 2:20-CV-711-JES-MRM, 2021 WL 2315003, at *4 (M.D. Fla. June 7, 2021) (Florida Deceptive and Unfair Trade Practices Act requires "actual damages"); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-56, 858 (Tex. App. 2005) (no standing under Texas' Deceptive Trade Practices Act where plaintiff received the "the benefit of their bargain; they were promised and they received seat belt buckles that latched and provided sufficient restraint."); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011) (New Jersey Consumer Fraud Act requires "ascertainable loss"); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *39 (N.D. Ill. Mar. 31, 2017) ("New York's consumer protection law also requires 'proof of malfunction.'") (quoting *In re Canon Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006)); *Bussie v. Am. Sec. Ins. Co.*, No. CV 20-3519, 2021 WL 2206282, at *9 (E.D. Pa. June 1, 2021) (Pennsylvania Unfair Trade Practices and Consumer Protection Law requires "ascertainable loss"); *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St. 3d 329, 335, 338 (2015) (Ohio Consumers Sales Protection Act requires "actual damages"); *Jones v. TCF Nat'l Bank*, No. 17-CV-13725, 2018 WL 4095036, at *4 (E.D. Mich. Aug. 28, 2018) (Michigan Consumer Protection Act requires "loss"); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (affirming dismissal of consumer fraud claims, among others, stating: "Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.").

they would not have bought J&J baby powder had they known of asbestos contamination, where they themselves suffered no adverse event, alleged no facts to suggest the risk of developing cancer, and did not allege facts setting forth any other economic injury. As the Third Circuit held, "references to Baby Powder being unsafe as to others are not relevant to determining whether she has standing herself." *Accord Riviera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 317 (5th Cir. 2002) (consumers of painkiller drug lacked Article III standing to sue when they complained that the drug maker failed to warn of potentially harmful side effects, but the plaintiffs themselves did not experience those side effects and suffered no physical or emotional injury).

Where, as here, there are no factual allegations suggesting that the consumer did not receive the product's promised benefits, the consumer has no claim. A contention that consumers other than the plaintiff suffered an adverse reaction is not injury. That was the essential holding of this Court's March 9, 2022 Memorandum Opinion and Order, and it is well-grounded in precedent. *See, e.g., Gredell v. Wyeth Labs., Inc.*, 854 N.E.2d 752, 757 (Ill. App. 2006) (where cough and cold remedy worked as promised for the plaintiff, no actual damage existed notwithstanding claimed lack of scientific support for the remedy's claimed health benefits).

Accordingly, Plaintiffs' claim that they were deprived of the "benefit of the bargain" remains as conclusory in the Second Amended Complaint as it was in the First Amended Complaint. Plaintiffs suffered no injury because, even crediting their allegations, they experienced no adverse reactions and the shampoo worked as intended for them. Further, there are no other allegations of fact in the Second Amended Complaint explaining what other economic damage might exist. As *Johnson & Johnson Talcum Powder* makes clear, a bald

claim that a plaintiff would not have purchased the product does not suffice. Illinois law is in accord. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 274-79 (2005) (purchasers of "light" cigarettes suffered no actual damage from alleged misrepresentation that they were less harmful that other cigarettes, where the plaintiffs wished to smoke and there was no price disparity vis-à-vis full-flavored cigarettes); *Frye v. L'Oreal USA Inc.*, 583 F. Supp.2d 954, 957-58 (N.D. Ill. 2008) (purchaser of lipstick allegedly contaminated with hexavalent chromium, a carcinogen, lacked actual damage because the complaint failed to allege any "loss to the plaintiff"; a claim that the plaintiff "would not have purchased the lipstick at issue" was not enough); *Sabo v. Wellpet, LLC*, 282 F.Supp.3d 1040 (N.D. Ill. 2017) (dismissing putative class action premised upon a conclusory claim that, but for the alleged misrepresentation, the plaintiff would not have bought the product or would have paid less for it).

Plaintiffs' statutory consumer and common law fraud claims here merit the same fate because injury is an essential element of all of them. The Second Amended Complaint does not allege that any Plaintiff experienced any adverse reactions when using the shampoos. On that basis alone, the statutory consumer and common law fraud claims should be dismissed. *See Berry v. City of Chicago*, 181 N.E.2d 679, 688 (2020) (injury required as the essential element of a common-law claim requires actual harm, and an increased risk of harm does not suffice).

## II. THE SECOND AMENDED COMPLAINT FAILS TO PLEAD A SPECIFIC MISREPRESENTATION UPON WHICH PLAINTIFFS RELIED OR THAT CAUSED THEIR PURCHASES.

### A. The Second Amended Complaint Does Not Plead a False Statement.

Alternatively, the Second Amended Complaint's fraud-based claims should be dismissed for failure to plead a false or misleading statement. That pleading's essential theory is that Unilever falsely promoted the TRESemmé products as "safe" when they contained a formaldehyde donor. (2d Am. Com., ¶ 152). However, the Second Amended Complaint

concedes that DMDM hydantoin was accurately disclosed as an ingredient on the product labeling. (*Id.*, ¶ 48). Having accurately disclosed the presence of DMDM hydantoin, it was neither deceptive nor misleading for Unilever to fail to provide a further disclosure that this preservative releases "small amounts" of formaldehyde over time and might cause others to have an allergic reaction. *See, e.g., McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 703, 706-07 (9th Cir. 2020) (consumers lacked standing to sue where they complained that microwave popcorn product was "unsafe" because it contained harmful transfat additives that could cause "heart disease, diabetes, cancer, and other ailments," where the plaintiffs failed to allege that the defendant "made any representations about Pop Secret's safety" and the ingredient label accurately disclosed the presence of transfats).

Where, as here, the ingredients are accurately disclosed on a label, the consumer can read the label and decide whether to buy the product. Statements of the product's benefits – *e.g.*, that a shampoo will "'deeply nourish,' 'gently cleanse[s],' and 'repair hair'" (2d Am. Compl., ¶ 45) – are truthfully stated for consumers who, like each of the Plaintiffs, used the products without incident. *See Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740–41 (N.D. Ill. 2019) ("A statement or label cannot mislead unless it actually conveys untrue information about a product."). Nowhere does the Second Amended Complaint allege that the TRESemmé shampoos do not smooth, gently clean, deeply nourish, add shine to, or repair hair. Quite to the contrary, the Second Amended Complaint makes clear that these Plaintiffs used the shampoos over an extended period of many years, evidently without any problems whatsoever. (2d Am. Compl., ¶¶ 162, 174, 186, 198, 210 and 222). In the absence of a false statement, the Second Amended Complaint's claims under state consumer fraud laws and for common law fraud fail as a matter of law and should be dismissed. *See, e.g., Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724,

738 (N.D. Ill. 2015) ("Plaintiff's complaint also fails to satisfy Rule 9(b) because it does not plead with particularity how Defendants' alleged misrepresentations were false.").

A truthful statement of a product's benefit is not rendered misleading by a failure to warn of a potential allergic reaction to a disclosed ingredient.  To the extent Plaintiffs argue otherwise, it is hornbook law that a product label or advertisement must contain false or misleading statements capable of deceiving a "reasonable" consumer and ***not*** deceiving only the idiosyncratic consumer.  *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (observing that, although state consumers fraud laws differ, they "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer").  By the same token, an alleged omission must be "material" to a "reasonable" consumer to be actionable.  *See Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 939 (N.D. Ill. 2008) (the "test [for materiality] is an objective one").  As the Ninth Circuit explained, the possibility that "some few consumers" might be misled is not enough; instead, "the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)).

The vast majority of consumers have no allergy and will not be misled.  Moreover, the presence of an allergen does not render Unilever's truthful statements deceptive to a *reasonable* consumer because Unilever accurately disclosed the ingredient on the product's labeling.  That is to say, those few consumers with an allergy can see the ingredient's presence on the label and avoid purchasing the product.  That, of course, is one of the prime reasons for identifying the ingredient on the label.  *See Stemm*, 374 F. Supp. 3d at 739 ("Whether an act is deceptive must

-14-

be evaluated 'in light of the totality of the information made available to the plaintiff.'") (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)); *see Bober*, 246 F.3d at 939 (same). And, for those consumers who are allergic to an ingredient but do not know it, a warning would be ineffective and, therefore, immaterial. [8]

### B. The Second Amended Complaint Fails the Test of Rule 9(b).

"To satisfy Rule 9(b), Plaintiff must identify a specific misrepresentation that he saw, the date he saw it, and where he saw it." *Baldwin*, 78 F. Supp. 3d at 738 (emphasis added). Rule 9(b), therefore, bars Plaintiffs from relying on general allegations about Unilever's purported misrepresentations, without pleading with precision that they actually saw those statements, where they saw them, and that the statement induced them to purchase the product.[9] *See Shailja Gandhi Revocable Tr. v. Sitara Cap. Mgmt., LLC*, No. 09 C 3141, 2011 WL 814647, at \*5 (N.D. Ill. Feb. 25, 2011) ("To show proximate causation [under the ICFA], the plaintiffs must set forth individualized allegations that they actually saw and were deceived by the statements at issue."); *see, e.g., Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (affirming dismissal of ICFA claim, stating plaintiff's "failure to cite a *specific* deceptive

---

[8] Relatedly, without an allegation that Plaintiffs are allergic to DMDM hydantoin, they cannot plausibly plead that the alleged failure to include a warning that some consumers could be allergic to that ingredient caused them actual damages, or that they relied on such an omission in purchasing the shampoos. That is yet another, independent basis to dismiss the claims for common fraud and statutory consumer fraud.

[9] *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 393 F. Supp. 3d at 756-57 (finding that the complaint did not plead causation or reliance, as applicable, under the statutory consumer fraud laws of, *inter alia*, California, Florida, New Jersey, New York, Michigan, and Illinois, because it did not allege that the plaintiffs saw the representation before purchase); *Webb v. Volvo Cars of N.A., LLC*, No. CV 13-2394, 2018 WL 1470470, at \*6-7 n.6 (E.D. Pa. Mar. 26, 2018) (Pennsylvania law) (noting that "[j]ustifiable reliance is also an element" of a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and dismissing claim because plaintiff failed to allege specific advertisement upon which she relied); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012) (Ohio law) (same); *Kerr v. Lambert*, No. 03-19-00359-CV, 2020 WL 6266005, at \*3 (Tex. App. Oct. 23, 2020) (noting that claim under the Texas Deceptive Trade Practices Consumer Protection Act requires detrimental reliance).

representation that caused her to pay for something she did not receive is particularly problematic in light of Rule 9(b)'s heightened standard") (emphasis added); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) (dismissing ICFA claim where complaint's "generalized allegations fail[ed] to describe with particularity the specific misrepresentations on which Plaintiff allegedly relied[,]" and did not identify 'the time, place, and content of the misrepresentation,' or 'the method by which the misrepresentation was communicated to the plaintiff'").

In the general section of their Second Amended Complaint (¶¶ 42-48, 97), Plaintiffs identify a hodgepodge of statements supposedly found in various sources. For instance, the Second Amended Complaint refers to alleged statements on Unilever's website, including "that the Products contain a formula intended to smooth hair, add softness and shine, and prevent frizzing and tangling; and that the Products 'deeply nourish,' 'gently cleanse,' and 'repair hair'" (2d Am. Compl., ¶ 45), or alleged statements about the safety of DMDM hydantoin (*id.* ¶ 69.) The Second Amended Complaint also refers to alleged warranties on product labels. (*Id.* ¶¶ 74-76.) However, the Second Amended Complaint fails to allege, except in conclusory terms, that Plaintiffs themselves reviewed, considered, or relied upon any of these *specific* statements before making their purchases. Instead, the Second Amended Complaint just advances the same conclusory allegation — *i.e..*, that each Plaintiff "reviewed information about the Products on the Products' label" — which fails to identify what, specifically, they reviewed and relied upon. (2d Am. Com., ¶¶ 127, 139, 151, 163, 175, 187, 199, 211, 223).

The Second Amended Complaint fails to even identify what TRESemmé product each Plaintiff supposedly purchased, instead lumping the broad portfolio of the TRESemmé brand into an all-encompassing definition of "the Products" and leaving Unilever to guess at what any

Plaintiff allegedly purchased.[10]  (*Id.*, ¶¶ 1, 125-229.)  Certainly, Plaintiffs cannot complain of TRESemmé products they never purchased or used and Unilever is entitled to know which TRESemmé products are at issue.  Worse still, not a single Plaintiff alleges that he or she reviewed Unilever's website before making any purchase.  (*Id.*, ¶¶ 114-183); *see O'Connor*, 477 F. Supp. 3d at 719 (complaint failed to comply with Rule 9 where plaintiff did not allege he reviewed website before leasing vehicle).  And, while the Second Amended Complaint alleges in conclusory fashion that Plaintiffs reviewed product labels, it does not identify any specific statement Plaintiffs actually read on those labels.  Even in its so-called "Fed. R. Civ. P. 9(b) Allegations" section, the Second Amended Complaint fails to identify the *specific* false or misleading statement that each Plaintiff supposedly read.  (*Id.*, ¶ 193.)  Such conclusory allegations do not pass muster under Rule 9(b).  *See, e.g., Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("stating that she visited the website is not sufficient to claim that she saw something that deceived her.  It does not provide the what or how of the fraud, as Rule 9(b) requires.").

Plaintiffs cannot bypass their obligation to plead, with specificity, that they actually reviewed and relied upon specific representations in making purchases (or that any specific representation actually caused their purchases), by a general discussion about Unilever's marketing untethered to any Plaintiff's experience.  *See, e.g., In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.,* No. 05 C 2623, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) ("Although specific advertisements are mentioned in the section of the complaint titled 'Substantive Allegations,' these plaintiffs do not allege that they saw any of these specific advertisements.").

---

[10]  The TRESemmé line includes a large number of individual shampoos, conditioners, and other hair-care products.  *See* https://www.TRESemme'.com/us/en/home.html# (last visited June 29, 2021).

**III.    THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (COUNT XI).**

The Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") "does not provide a cause of action for damages – its only remedy is injunctive relief." *Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*, No. 04 C 3879, 2005 WL 433327, at *10 (N.D. Ill. Feb. 22, 2005). To maintain an action for injunctive relief under UDTPA, Plaintiffs must allege that Unilever's "conduct will likely cause [them] harm in the future." *Camasta*, 761 F.3d at 740. However, this Court has already held that Plaintiffs do not have standing to seek injunctive relief under Article III and the Second Amended Complaint makes no such allegations. Accordingly, this count must be dismissed. *See, e.g.*, *Camasta*, 761 F.3d at 741 (affirming dismissal of UDTPA claim; "Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."); *Reid,* 964 F. Supp. 2d at 918-19 (same).

**IV.    THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTY (COUNTS II AND III).**

    **A.    The Second Amended Complaint Fails To Plead That The Shampoos Plaintiffs Purchased Did Not Perform As Allegedly Promised Or Were Not Fit For Their Intended Or Ordinary Purpose.**

"To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin*, 78 F. Supp. 3d at 739 (internal quotation marks and citation omitted). To recover damages, a plaintiff must plausibly plead a breach or failure of a warranty and damages measured under the warranty. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015). If a plaintiff fails to plausibly plead that the goods purchased actually failed to conform to an alleged warranty, the claim fails. *See Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307,

320 (2007) ("If a seller delivers conforming goods, the warranty is satisfied. If the seller delivers nonconforming goods, the warranty is breached at that time."); *Dickie v. Cannondale Corp.*, No. 13-3889, 2016 WL 3765798, at *4 (Ill. Ct. App. 2016) ("If the goods fail to conform to the affirmations or promises, the seller may be held accountable for breach of warranty.") (citing *Weng v. Allison*, 287 Ill. App. 3d 535, 537 (1997)).

The Second Amended Complaint flunks this standard. Plaintiffs' claims for breach of express warranty fail because the Second Amended Complaint does not plausibly plead a breach of that warranty. More bluntly stated, the Second Amended Complaint fails to allege any facts to show that any Plaintiff suffered an adverse reaction – and in the absence of such an allegation, there was no breach of warranty as to that Plaintiff. Having failed to plead that the products *they purchased* failed to conform to any alleged expressed warranty, Plaintiffs' claims fail as a matter of law and should be dismissed.

Furthermore, the Second Amended Complaint does not plead that any alleged express warranties formed the basis of Plaintiffs' bargain. As established above, it fails to allege that Plaintiffs ever saw any specific warranty (whether on a website, product label, or elsewhere) before they made their purchases; instead, and for each of the ten Plaintiffs, the Second Amended Complaint simply alleges that each reviewed unspecified "disclosures, warranties, and marketing materials. . . ." (2d Am. Compl., ¶¶ 128, 140. 152, 164, 176, 188, 200, 212, 224.) But conclusions like "Plaintiff reviewed the warranty" are not enough under *Twombly*; instead, the Second Amended Complaint must plead *facts* to show what specific text each Plaintiff reviewed and comprised the purported warranty. On that basis alone, the breach of express warranty claim should be dismissed. *See, e.g.*, *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019) (noting "plaintiff has not alleged that she ever saw the statement on the website

before making her purchase," and dismissing the claim because "plaintiff has failed to allege plausibly that the information on defendant's website was part of the basis of the bargain").[11] Furthermore, without specifying the statements they actually reviewed, Plaintiffs cannot plausibly plead reliance, which is an additional required element of warranty claims under Illinois, New York, Texas, Florida Michigan, Pennsylvania, and Ohio law.[12] For that reason too, Plaintiffs' claims fail.

Plaintiffs' claim for breach of the implied warranty of merchantability fails for the same reasons. To state such a claim, Plaintiffs must plead that the shampoos they purchased were not fit for their ordinary or intended purpose. *See* Cal. Com. Code § 2314(2)(c); Fla. Stat. Ann. § 672.314(2)(c); Mich. Comp. Laws Ann. § 440.2314(2)(c); Tex. Bus. & Com. Code Ann. § 2.314(b)(3); 810 Ill. Comp. Stat. 5/2-314(2)(c); N.J. Stat. Ann. § 12A:2-314(2)(c); N.Y. U.C.C. § 2-314 (2)(c) (McKinney); 13 Pa. Stat. and Cons. Stat. Ann. § 2314(b)(3); Ohio Rev. Code Ann. § 1302.27(B)(3). Again, the Second Amended Complaint does not plead that any shampoo Plaintiffs purchased failed to do what a shampoo is supposed to do; that is, wash and clean their hair. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d. 1012 (7th Cir. 2002) ("most states would not entertain" a warranty claim by a consumer whose product performed without incident, and

---

[11] Like Illinois, the remaining jurisdictions at issue here require express warranties to be "part of the basis of the bargain," in order to be actionable. *See* Cal. Com. Code § 2313(1); Fla. Stat. Ann. § 672.313(1); Mich. Comp. Laws Ann. § 440.2313(1); N.J. Stat. Ann. § 12A:2A-313(1); N.Y. U.C.C. Law § 2-313(1) (McKinney); 13 Pa. Stat. and Cons. Stat. Ann. § 2313(a); Tex. Bus. & Com. Code Ann. § 2.313; Ohio Rev. Code Ann. § 1302.26(A).

[12] *See Regopoulos v. Waukegan P'Ship*, 240 Ill.App.3d 668, 674 (1992) (Illinois law) (plaintiff must actually rely on alleged warranty); *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018) (New York law) (same); *TEU Servs., Inc. v. Inventronics USA, Inc.*, No. SA-16-CV-01023-RCL, 2018 WL 3338217, at *11 (W.D. Tex. Feb. 5, 2018) (Texas law) (same); *Arcure v. Kellogg Co.*, No. 210CV192FTM36SPC, 2011 WL 13294631, at *5 (M.D. Fla. Mar. 29, 2011) (Florida law) (same); *Berg v. Invacare Corp.*, No. CV 17-12362, 2020 WL 8408966, at *2 (E.D. Mich. Feb. 25, 2020) (Michigan law) (same); *Miller v. Heil Co.*, No. 3:20-CV-00091, 2021 WL 927943, at *3 (W.D. Pa. Mar. 11, 2021) (Pennsylvania law) (same); *Utter v. Peachtree Companies, Inc.*, No. 1:08CV767, 2010 WL 11635925, at *3 (S.D. Ohio Aug. 3, 2010) (Ohio law) (same).

who therefore got substantial use from the product); *Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, at *5 (N.D. Ill. June 16, 2017) (where complaint alleged lotion falsely stated it contained aloe vera, dismissing claim for breach of implied warranty of merchantability because plaintiffs "fatally neglect to plead that the Gel failed to cool (or moisturize) their skin"); *Jasper v. Abbott Lab'ys, Inc.*, 834 F. Supp. 2d 766, 774 (N.D. Ill. 2011) (party cannot rely on the experiences of others to establish breach of implied warranty).[13] Plaintiffs received exactly what they bargained for: shampoos that washed and cleaned their hair. Therefore, Plaintiffs' claims for breach of implied warranty should be dismissed.

**B. The Second Amended Complaint Admits the Absence of Privity With Unilever, A Required Element In Most Jurisdictions.**

Even if Plaintiffs could establish a breach of an express or implied warranty, the claims still would fail because the Second Amended Complaint does not plead privity of contract between any Plaintiff and Unilever, which is a required element in most jurisdictions. To the contrary, the Second Amended Complaint admits that all ten Plaintiffs purchased the TRESemmé products from a third-party retailer. (2d Am. Compl., ¶¶ 126, 138, 150, 162, 176, 186, 198, 210, 222). In that admitted absence of privity, the Second Amended Complaint's

---

[13] *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.") (internal quotation marks and citation omitted); *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, No. 1:02CV00013, 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005) ("The great weight of authority from other jurisdictions indicates that a plaintiff has not suffered a present injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other, identical products."); *Am. Honda Motor Co. v. Superior Ct.*, 199 Cal. App. 4th 1367, 1375 (2011) (California law) ("A breach of warranty cannot result if the product operates as it was intended to and does not malfunction during its useful life."); *Holtec Int'l v. ARC Machines, Inc.*, 492 F. Supp. 3d 430, 445 (W.D. Pa. 2020) (Pennsylvania law) (same); *Hubbard v. Gen. Motors Corp.*, No. 95 CIV. 4362, 1996 WL 274018, at *3 (S.D.N.Y. May 22, 1996) (New York law) (same); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (Florida law) (same); *Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003) (same); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-56 (Tex. App. 2005) (Texas law) (same).

claims for breach of express warranty under Texas, New York, Florida, and Michigan law must be dismissed.[14]  For the same reason, the claims for breach of the implied warranty of merchantability under Illinois, California, New York, Florida, and Ohio law must also be dismissed.[15]

## V.  THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT (COUNT V).

Finally, the Second Amended Complaint's failure to plead that any of the ten Plaintiffs themselves suffered an allergic reaction dooms its claims for unjust enrichment.  In the absence of such allegations, each Plaintiff received the shampoo they bargained for and the Second Amended Complaint fails to plausibly plead any deceptive or inequitable conduct.  Accordingly, the unjust enrichment claim cannot be sustained and should be dismissed.  *See In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d at 927 (citing authority applying, *inter alia*, Illinois, California, Michigan, and New York law); *see also Davis v. Fresh*

---

[14]  *See Barragan v. Gen. Motors LLC*, No. 4:14-CV-93-DAE, 2015 WL 5734842, at *9, 13 (W.D. Tex. Sept. 30, 2015) (Texas law) (noting that, "[t]o recover for breach of express warranty, the plaintiff must be in privity with the manufacturer or seller of the product," and granting motion to dismiss because consumer did not buy car from manufacturer); *Manufacturers & Traders Tr. Co. v. Stone Conveyor, Inc.*, 458 N.Y.S.2d 116, 117 (N.Y. App. Div. 1982) (New York law) (same); *Vision Pharma, LLC v. Sterling Pharm. Servs., LLC*, No. 218CV500FTM99MRM, 2019 WL 1532534, at *6 (M.D. Fla. Apr. 9, 2019) (Florida law) (privity required); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (Florida law) (dismissing claim); *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) (Michigan law) (same)

[15]  *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (Illinois law) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty."); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (Illinois law) (dismissing claim for breach of implied warranty against manufacture with prejudice, because there can be no privity between consumer who bought product from retailer, not manufacturer); *Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2012 WL 5381236, at *8 (N.D. Ill. Oct. 31, 2012) (Illinois law) (same); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1160 (S.D. Cal. 2015) (California law) (dismissing claim); *Manufacturers and Traders Tr. Co.,* 458 N.Y.S.2d at 117 (New York law) (same); *Soule v. Norton*, 750 N.Y.S.2d 692, 695 (N.Y. App. Div. 2002) (New York law) (same); *Vision Pharma,* 2019 WL 1532534, at *6 (Florida law) (privity required); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (Florida law) (dismissing claim); *Smith v. Hartz Mountain Corp.*, No. 3:12-CV-00662, 2012 WL 5451726, at *5 (N.D. Ohio Nov. 7, 2012) (Ohio law) (same); *Oblak v. Integra Lifesciences Corp.*, No. 1:16 CV 1832, 2017 WL 1831098, at *3 (N.D. Ohio May 4, 2017) (Ohio law) (same).

*Mkt., Inc.*, No. 1:19-CV-24245-PCH, 2020 WL 3489369, at *3 (S.D. Fla. June 26, 2020) (Florida law); *Webb v. Volvo Cars of N.A., LLC*, No. CV 13-2394, 2018 WL 1470470, at *11 (E.D. Pa. Mar. 26, 2018) (Pennsylvania law); *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1059 (N.D. Ohio 2014) (Ohio law); *In re Riddell Concussion Reduction Litig.*, 77 F.Supp.3d 422, 439–40 (D.N.J. 2015) (New Jersey law). In any event, unjust enrichment is not an independent cause of action under Texas law. *See Taylor v. Trevino*, No. 3:20-CV-0393-D, 2021 WL 347566, at *3 (N.D. Tex. Feb. 2, 2021) (dismissing claim).

## CONCLUSION

Plaintiffs have now had multiple opportunities to plead their case, including a Complaint, a First Amended Complaint, and now a Second Amended Complaint, as well as the benefit of the Court's ruling in the March 9, 2022 Memorandum and Order. Because the Second Amended Complaint still fails to plead a claim for relief, it should therefore be dismissed, with prejudice.

Dated: June 29, 2022

By: */s/ Gavin J. Rooney*
Gavin J. Rooney
Reynold Lambert
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212.419.5853

By: */s/ Julie M. Brummond*
**FOLEY & MANSFIELD, PLLP**
Julie M. Brummond
70 West Madison Street, Suite 3000
Chicago, IL 60602
312-254-3810
312-254-3801 (Fax)
jbrummond@foleymansfield.com

*Attorneys for Defendants*