IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMILY CASTILLO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNILEVER UNITED STATES, INC., and CONOPCO, INC. d/b/a UNILEVER HOME & PERSONAL CARE USA, <br><br> Defendants. | Case Number: 1:20-cv-06786 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**FOLEY & MANSFIELD, PLLP**
70 West Madison Street, Suite 3000
Chicago, IL 60602
312-254-3810

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212.419.5853

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. THE SECOND AMENDED COMPLAINT STILL FAILS TO PLEAD ACTUAL DAMAGES OR INJURY REQUIRED FOR ALL OF ITS CLAIMS. ..................................................................................................................... 1

II. ALTERNATIVELY, THE SECOND AMENDED COMPLAINT'S FRAUD CLAIMS SHOULD BE DISMISSED FOR LACK OF A FALSE STATEMENT PLEADED CONSISTENT WITH RULE 9(B). ........................... 5

III. PLAINTIFFS DO NOT CONTEST DISMISSAL OF THE UDPTA CLAIM. ...................................................................................................................... 8

IV. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTY. ................................ 8

    A. The Second Amended Complaint Fails To Plead Breach Of Any Warranty. ................................................................................................... 8

    B. The Amended Complaint Fails To Plead Privity. ..................................... 9

V. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT. ......................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 3, 4

*Barnes v. Unilever United States, Inc.*,
    2022 WL 2915629 (N.D. Ill. July 24, 2022) .............................................................. 1, 2

*Bell v. Publix Super Markets*,
    982 F.3d 468 (7th Cir. 2020) ......................................................................................... 6

*Berge Helene Ltd. v. GE Oil & Gas, Inc.*,
    830 F. Supp. 2d 235 (S.D. Tex. 2011), *superseded in part*, 896 F. Supp. 2d
    582 .................................................................................................................................. 9

*Camasta v. Jos. A Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ......................................................................................... 4

*Caterpillar, Inc. v. Usinor Industeel*,
    393 F. Supp. 2d 659 (N.D. Ill. 2005) ......................................................................... 11

*Frank's Maintenance. & Engineering, Inc. v. C. A. Roberts Co.*,
    86 Ill. App. 3d 980 (1980) ........................................................................................... 10

*Gredell v. Wyeth Labs., Inc.*,
    854 N.E.2d 752 (Ill. App. 2006) .................................................................................... 2

*Haywood v. Massage Envy Franchising, LLC*,
    887 F.3d 329 (7th Cir. 2018) ......................................................................................... 7

*Ibarolla v. Nutrex Rsch., Inc.*,
    No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) ................................... 11

*Lipton v. Chattem, Inc.*,
    2012 WL 1192083 (N.D. Ill. April 10, 2012) ............................................................. 2

*Manley v. Hain Celestial Group, Inc.*,
    417 F. Supp. 3d 1114 (N.D. Ill. 2019) ............................................................. 8, 10, 11

*In re McDonald's French Fries Litigation*,
    503 F. Supp. 2d 953 (N.D. Ill. 2007) ......................................................................... 10

*Muir v. Playtex Products, LLC*,
    983 F. Supp.2d 980 (N.D. Ill. 2013) ............................................................................. 3

*Pierre v. Healthy Beverage, LLC*,
  2022 WL 596097 (E.D. Pa. Feb. 28, 2022) ...............................................................................7

*Quitno v. Gen. Motors, LLC*,
  No. 1:18-CV-07598, 2020 WL 777273 (N.D. Ill. Feb. 18, 2020) ............................................11

*Rhodes Pharmacal Co. v. Cont'l Can Co.*,
  72 Ill. App. 2d 362, 371 (Ill. App. Ct. 1966) .........................................................................10

*Rudy v. Family Dollar Stores, Inc.*,
  2022 WL 345081 (N.D. Ill. Feb. 4, 2022) .................................................................................6

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
  No. 05 C 2623, 2009 WL 937256 (N.D. Ill. Apr. 6, 2009) .......................................................7

*Spector v. Mondelez International, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ........................................................................................2

*Vanzant v. Hill's Pet Nutrition, Inc.*,
  934 F.3d 730 (7th Cir. 2019) .................................................................................................3, 4

*Wyant v. Dude Products, Inc.*,
  2022 WL 621815 (N.D. Ill. March 3, 2022) .............................................................................6

**RULES**

Rule 9(b) ....................................................................................................................................5, 6, 7

Rule 12(b)(6).....................................................................................................................................6

**REGULATIONS**

21 CFR 701, *et seq*..........................................................................................................................5

Defendants Unilever United States, Inc. and Conopco, Inc. (collectively, "<u>Unilever</u>"), respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint.[1]

## I. THE SECOND AMENDED COMPLAINT STILL FAILS TO PLEAD ACTUAL DAMAGES OR INJURY REQUIRED FOR ALL OF ITS CLAIMS.

Plaintiffs have not pleaded the "actual damages" required by the ICFA. In its Memorandum Opinion and Order of March 9, 2022, the Court summarized the following key points from the First Amended Complaint's theory of "actual damages":

- Unilever's TRESemmé products "contain DMDM hydantoin, a formaldehyde-releasing preservative, as an ingredient";

- "People allergic to DMDM hydantoin can experience adverse reactions – including itchiness, rashes, dermatitis, hair brittleness and hair loss";

- Products that contain DMDM hydantoin "thus are 'dangerous,' 'unfit for sale,' 'toxic,' and 'defective'"; and

- "[Plaintiffs] would not have purchased the products or would have paid less for them" had they "been aware of the risks of DMDM hydantoin."

[Dkt. No. 55, pages 2-3.] Nothing has changed -- the Second Amended Complaint relies upon these same allegations. As they did before, Plaintiffs <u>*still*</u> "do not allege that they are allergic to DMDM hydantoin or that they suffered adverse effects from using products containing the ingredient." [*Id*.] Rather, Plaintiffs continue to cite conclusory allegations they lost the "'benefit of their bargain'" because the products were "'unsafe'" and "'d[id] not safely smooth, nourish, cleanse, and/or repair hair." [*Id*.] These allegations were lacking before, and they remain lacking now.

Nevertheless, Plaintiffs contend that the Court should reach a different result today because DMDM hydantoin, as a formaldehyde releaser, exposed Plaintiffs to small amounts of

---

[1] All abbreviations used herein have the same meaning set forth in Unilever's opening Memorandum of Law.

formaldehyde, which is "inherently dangerous and unsafe to all users" and which meant that Plaintiffs "have not received the benefit of their bargain." (Plaintiffs' Memorandum ("Pl. Mem.") at 5). This is nothing new; the same allegation appeared in the First Amended Complaint. [*See* Dkt no. 33, ¶¶ 20-33.] The Court's March 9, 2022 Memorandum Opinion and Order specifically addressed allegations that the product is "'dangerous,' 'unfit for sale,' 'toxic,' and 'defective,'" which the Court found insufficient to state an actual injury. Crucially, Plaintiffs have still failed to allege that they themselves suffered any ill effects from the TRESemmé products. As Judge Durkin held in *Spector v. Mondelez International, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016), "[i]n cases where the plaintiff's claim of financial injury under the ICFA has been upheld as a basis for damages, the complaint also alleged that the plaintiff experienced the product not working." *See Gredell v. Wyeth Labs., Inc.*, 854 N.E.2d 752, 757 (Ill. App. 2006) ("[I]f plaintiff admitted getting relief from use of the drugs and could not otherwise show the drugs were ineffective, he has suffered no actionable damage.").

The cases that Plaintiffs cite are inapposite to the present allegations. *Lipton v. Chattem, Inc.*, 2012 WL 1192083 (N.D. Ill. April 10, 2012), and *Barnes v. Unilever United States, Inc.*, 2022 WL 2915629 (N.D. Ill. July 24, 2022), were both contamination cases where plaintiffs bought the product ignorant of its contamination by an unwanted carcinogen. *Lipton*, for example, involved a product's contamination with hexavalent chromium, whose labels did "not disclose that it contains hexavalent chromium," and where the plaintiff alleged that she would not have purchased the product had she known it was contaminated with hexavalent chromium. Likewise, *Barnes* involved alleged benzene contamination. In the present case, by contrast, DMDM hydantoin is an intended ingredient (not an unwanted contaminant) whose presence was disclosed on the ingredient labeling. In *Muir v. Playtex Products, LLC*, 983 F. Supp.2d 980

(N.D. Ill. 2013), the Court addressed a claim that a diaper-disposal product manufacturer falsely represented that it was "Proven #1 in Odor Control," when independent tests had concluded that the product was no better at controlling odors than its competitors. The Court recognized a claim for actual damages because the defendant charged a higher price for its product premised upon its false representation of superior efficacy vis-à-vis competitors. *Id*. at 990. These facts are wholly absent here.

Next, Plaintiffs contend that the Second Amended Complaint passes muster based upon a conclusory allegation that they "paid a price premium or inflated price." (Pl. Mem. at 5). But this, too, was alleged in the First Amended Complaint and found lacking by the Court in its March 9, 2022 Memorandum Opinion and Order. Plaintiffs gloss over the key distinction between allegations of *fact* (which must be pleaded to plausibly set forth a claim for relief) and parroting the legal elements of a claim (which *Iqbal* tells us is insufficient). Nowhere does the Second Amended Complaint plead *facts* which, if proven, would show that Unilever charged a "premium" price for the TRESemmé products based upon misrepresentation of the quality of the product. Whether Plaintiffs allegedly failed to receive "the benefit of their bargain," or paid a "premium" or "inflated" price, such "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" [Dkt. No. 55, at 10, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]. As they did before, Plaintiffs still fail to advance any allegations of fact which, if true, plausibly plead that they did not receive the benefit of their bargain or paid a premium price.

The very cases cited by Plaintiffs make this point. *Muir* addressed factual allegations that a defendant charged more for its product than competitors based upon false representations of the product's superior efficacy ("'Proven #1 in Odor Control.'"). *Vanzant v. Hill's Pet Nutrition,*

*Inc.*, 934 F.3d 730 (7th Cir. 2019), examined a "higher-priced" pet food advertised as a supposed "Prescription Diet," when it was allegedly no different from cheaper, generic pet food. Having alleged that the defendant charged premium pricing based upon its false representation of a "Prescription Diet" product, the Seventh Circuit concluded that the plaintiffs "suffered damages because they paid a higher price." *Id*. at 739. By contrast, there are no allegations of fact here that Unilever charged a higher price for TRESemmé products compared to competing products. And there are certainly no allegations that Unilever justified higher prices by making false assertions of its product's efficacy, such as "Proven #1 Odor Control" or "Prescription Diet." Conversely, in *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), the Seventh Circuit found the plaintiff had failed to plead "actual damages" under the ICFA where the plaintiff complained that a clothing retailer falsely advertised its normal prices as temporary sale prices, when he failed to advance allegations of fact (as opposed to "'speculative and conclusory'" allegations) that he could have bought the same shirts elsewhere at a cheaper price. *Id*. at 739-40.

As in *Camasta*, all we have here are conclusory allegations -- which do not suffice to demonstrate the "actual injury" required by the ICFA consistent with *Iqbal*. If the plaintiff alleges that the defendant charged a premium price based upon a false promise of superior efficacy, then she must allege facts which, if proven, would show this to be so. Absent such a rule, any purchaser of any product could claim "actual damages" with conclusory statements that she supposedly failed to receive "the benefit of her bargain" by paying a supposed "premium" price.

Plaintiffs' last gasp at demonstrating "actual damage" is their assertion that DMDM hydantoin releases small amounts of formaldehyde, a carcinogen. Of course, this too is nothing

new: the First Amended Complaint alleged, and the Court in its March 9, 2022 Memorandum Opinion and Order recognized, that DMDM hydantoin releases small amounts of formaldehyde as a preservative. That is how DMDM hydantoin works in order to preserve the product from microbial growth. As we noted in our opening Memorandum, the principal change made by the Second over the First Amended Complaint was a far more liberal use of the word "formaldehyde" – which is mentioned 56 times in the First Amended Complaint, and 188 times in the Second Amended Complaint. But notwithstanding its more liberal use of that word, the Second Amended Complaint does not allege that DMDM hydantoin or the small amounts of formaldehyde it releases poses a risk of injury to anyone, apart from these hypersensitive individuals who may have an allergic reaction in the form of skin irritation, dermatitis, or hair loss – injuries which none of the Plaintiffs claim to have experienced.

Finally, Plaintiffs do not dispute that if the Second Amended Complaint fails to demonstrate "actual damages" under the ICFA then the remainder of their statutory and common-law claims fail as well. Accordingly, the entirety of the Second Amended Complaint should be dismissed, with prejudice.

## II. ALTERNATIVELY, THE SECOND AMENDED COMPLAINT'S FRAUD CLAIMS SHOULD BE DISMISSED FOR LACK OF A FALSE STATEMENT PLEADED CONSISTENT WITH RULE 9(B).

There is no false statement here. The TRESemmé products promise to cleanse hair, and no facts alleged in the Second Amended Complaint suggest that they do not. What Plaintiffs are really saying is that some few consumers may have an adverse reaction to DMDM hydantoin. But the TRESemmé ingredient labeling accurately disclosed the presence of DMDM hydantoin. Such ingredient labeling complies with FDA regulations, *see* 21 CFR 701, *et seq.*, and allows consumers to make an educated purchasing decision – that is, if the consumer knows that she has a DMDM hydantoin allergy, she can avoid buying the product. A manufacturer who makes

-5-

truthful statements regarding a product's benefits does not commit consumer fraud by failing to warn of a potential allergic reaction, when the allergen is disclosed in the product labeling. Accordingly, all fraud claims must be dismissed.

Remarkably, Plaintiffs suggest that the Court is powerless to assess via a Rule 12(b)(6) motion whether they have pleaded facts which, if proven, would demonstrate the falsity of a statement made by the defendant. (Pl. Mem. at 7-8). But the decisions Plaintiffs cite do not reach nearly so far. Instead, they address a much more narrow issue: that is, whether a false or misleading statement made on the front of a product label may be cured by contrary disclosures made in fine print or on the back label. In *Bell v. Publix Super Markets*, 982 F.3d 468 (7th Cir. 2020), the product claimed that it was "100% Grated Parmesan Cheese" when, in fact, the product included other substances, as was disclosed on the ingredient list. The Seventh Circuit held that it was for the jury to decide whether the ingredient labeling cured the misleading nature of the "100% Grated Parmesan Cheese" claim. More pertinent here, however, *Bell* cautioned district courts against the very kind of over-reading of its significance that Plaintiffs advance here – and, to that end, the opinion instructs that "deceptive advertising claims based on unreasonable or fanciful interpretations of labels" should still be dismissed, and that "deceptive advertising clams should take into account all of the information available to consumers and the context in which the information is provided and used." *Id*. at 477. Clearly, there is no Seventh Circuit rule that prevents a district court from dismissing consumer fraud claims on the pleadings.

Further, Plaintiffs address straw-men arguments and miss the point in their extensive discussion of cases like *Bell* where a defendant argued that fine-print or back-label disclosures cured a false or misleading statement. (Pl. Mem. at 8-11). Unlike *Bell* and the other cases cited

by Plaintiffs,[2] there is no allegation here that the TRESemmé labels misleadingly advertise the products' ability to cleanse hair. Unilever pointed to the DMDM hydantoin on the ingredient labeling not to cure a misleading statement, but rather to make clear that those few consumers who may be allergic to DMDM hydantoin may avoid purchasing the product. None of the cases cited by Plaintiffs address the question actually presented here – that is, whether a manufacturer's truthful statements of a product's efficacy are somehow rendered misleading in the absence of a warning of potential adverse reactions to an ingredient accurately disclosed on the label. And that is because there is no such authority. It is simply not fraud. Indeed, for those who are unaware of their allergy, such a warning would be useless.[3]

The Second Amended Complaint fails the test of Rule 9(b). The Second Amended Complaint does not identify which specific product each Plaintiff bought. It also fails to identify specific representations each Plaintiff reviewed or relied upon before purchasing products. Plaintiffs cannot satisfy Rule 9 by merely saying they looked at labels, *see, e.g.*, *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018), or by referring to a general discussion about marketing untethered to any Plaintiff's experience, *see, e.g.*, *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.,* No. 05 C 2623, 2009 WL 937256, at *6 (N.D.

---

[2] In each case, the defendant was charged with having made a misleading statement to promote sales of its product. *See, e.g., Wyant v. Dude Products, Inc*., 2022 WL 621815 (N.D. Ill. March 3, 2022) (defendant's label misleadingly touted "flushable wipes" when, in fact, they were not flushable in all systems); *Rudy v. Family Dollar Stores, Inc*., 2022 WL 345081 (N.D. Ill. Feb. 4, 2022) (defendant advertised its almonds as "smoked," when they were not roasted over an open fire; instead, the almonds were flavored using natural smoke flavor); *Pierre v. Healthy Beverage, LLC*, 2022 WL 596097 (E.D. Pa. Feb. 28, 2022) (defendant represented its soft drink as "lightly sweetened," when it had a high sugar content). And the courts declined to decide, on a motion to dismiss, whether further disclosures made elsewhere in the labeling cured the allegedly misleading nature of these statements.

[3] *See, e.g*., *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 202 (1st Dep't 1964) ("Of course, the statement that the product contained a particular sulphate was adequate to warn any and all persons who knew that they had an allergy with respect to the same" and a "special warning in general terms of danger" would have no effect on consumers who do not know they are allergic to an ingredient).

Ill. Apr. 6, 2009). Plaintiffs cannot refute the fact that the Second Amended Complaint relies upon vague generalities, so they claim they need not comply with Rule 9.

According to Plaintiffs, Rule 9(b) does not apply to them because the Second Amended Complaint "alleges both deceptive conduct and *unfair* conduct." (Pls. Mem. at 17) (emphasis in original). But Plaintiffs ignore cases rejecting similar attempts to evade Rule 9(b) where, as here, the complaint is based on allegations of false and deceptive advertising. (*See* Defendants' Opening Memorandum ("Defs. Mem.", at 15-17).)

### III.    PLAINTIFFS DO NOT CONTEST DISMISSAL OF THE UDPTA CLAIM.

Plaintiffs present no argument as to why their UDTPA claim, which allows only for injunctive relief, should survive this motion, especially when the Court already ruled that Plaintiffs lack standing to sue for injunctive relief. (Def. Mem. at 18). Accordingly, the UDPTA claim should be dismissed.

### IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTY.

#### A.    The Second Amended Complaint Fails To Plead Breach Of Any Warranty.

As established above, the Second Amended Complaint relies on vague generalities and does not identify which, if any, *specific* alleged representation(s) Plaintiffs purportedly read before purchasing product. That shortcoming dooms Plaintiffs' claims for breach of express warranty, as Plaintiffs fail to plausibly plead that any representation formed the basis of their bargain or reliance, where applicable. Plaintiffs' attempt to distinguish *Manley v. Hain Celestial Group, Inc.*, 417 F. Supp. 3d 1114 (N.D. Ill. 2019), falls short. As in *Manley*, Plaintiffs refer to alleged statements on Unilever's website about safety, but they do not assert that any Plaintiff reviewed the website. Thus, Plaintiffs cannot sustain any claim for breach of any alleged

warranty found on the website. The same is true for product labels – Plaintiffs do not identify which, if any, of the statements on the labels Plaintiffs reviewed before purchasing the products.

Plaintiffs' express warranty claims also fail because the products worked as promised. No amount of spinning or hyperbole will change the fact that the Amended Complaint fails to plead *any* allegation that the products did not add shine to or clean *Plaintiffs'* hair, or that *they* suffered any allergic reaction from using the shampoos.

As for their claims for breach of the implied warranty of merchantability, Plaintiffs have no defense. All they can muster is an assertion that the shampoos were unfit for their "intended use or ordinary purpose," citing conclusory allegations that DMDM hydantoin was purportedly not "safe." (Pls. Mem. at 21.) Plaintiffs ignore settled law rejecting claims where, as here, the product functioned as it was supposed to for the plaintiffs, and further refusing to consider supposed defects experienced by others or that never manifest. (*See* Defs. Mem. at 20-21, n.13.) Plaintiffs received exactly what they bargained for: shampoos that cleaned their hair; and they suffered no allergic reaction from using the shampoos.

B. **The Amended Complaint Fails To Plead Privity.**

Unilever's moving submission established that Plaintiffs' claims for breach of express warranty under Texas, New York, Florida, and Michigan law fail because those jurisdictions require a showing of privity. (Defs. Mem. at 21-22, n.14-15.) In their opposition, Plaintiffs do not dispute that fatal deficiency as to Florida and Michigan. Plaintiffs dispute the existence of a privity requirement under Texas law, but cite only to a single case involving direct communications between the buyer and the manufacturer that is obviously absent here.[4] And

---

[4] *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 830 F. Supp. 2d 235, 251-52 (S.D. Tex. 2011), *superseded in part*, 896 F. Supp. 2d 582 (S.D. Tex. 2012) ("Berg has produced substantial uncontroverted evidence that it had direct communications with GE about the compressors at issue.").

while Plaintiffs purport to dispute the privity requirement under New York law, they fail to cite to any New York authority and, instead, cited an irrelevant decision from Alaska addressing situations where, unlike here, a defect in the product caused personal injury to the plaintiff or injury to the plaintiff's property. (Pl. Mem. at 22 and 23, n.17). Otherwise, Plaintiffs attempt to invoke an exception to privity purportedly recognized under *Illinois* law (Pls. Mem. at 23), which is irrelevant.[5] Plaintiffs identify no applicable exception recognized by Texas, New York, Florida, and Michigan courts for express warranty claims; therefore, those claims should be dismissed.

As for their claim for breach of implied warranties, Plaintiffs try to invent an exception to the privity requirement under Illinois law. They claim the Amended Complaint alleges privity because Defendants' sales were "either direct or through authorized sellers," which Plaintiffs argue make them third-party beneficiaries. (Pls. Mem. at 23.) To begin with, the conclusory reference to "direct" sales is contradicted by the Amended Complaint, which makes clear that Plaintiffs bought product from independent third-party retailers and not from Unilever itself. (*See, e.g.,* Sec. Am. Compl., ¶ 126 (Plaintiff Castillo bought the product from Target).)

Illinois courts do not recognize an exception to the privity requirement for consumers like Plaintiffs who buy products from a third-party retailer. Plaintiffs cite two cases – *i.e.*, *Rhodes Pharmacal Co. v. Cont'l Can Co.*, 72 Ill. App. 2d 362, 371 (Ill. App. Ct. 1966), and *Frank's Maintenance. & Engineering, Inc. v. C. A. Roberts Co.*, 86 Ill. App. 3d 980, 982 (1980). But courts have concluded that the Illinois Supreme Court has likely overruled *Rhodes* and *Frank's* (which is based on *Rhodes*). *See, e.g.*, *Manley*, 417 F. Supp. 3d at 1123-24.

---

5   Indeed, the court in *In re McDonald's French Fries Litigation*, 503 F. Supp. 2d 953 (N.D. Ill. 2007), cited by Plaintiffs, refused to apply the exception to other jurisdictions, including Florida. *Id.* at 958.

Even if *Rhodes* and *Frank's* survive today, the exception they recognized has no applicability here. Under a unique set of facts, the courts in those cases concluded that the consumers could be third-party beneficiaries of contracts between manufactures and sellers because the manufacturers had "direct dealings" with the consumer on design, *Rhodes*, 72 Ill. App. 2d at 365, 372, and built a product to specifications ordered by a consumer and shipped the product directly to the consumer, *Frank's*, 86 Ill. App. 3d at 993. Given the narrow scope of the exception, Illinois courts have refused to apply it where, as here, consumers "picked [products] off the shelf at a" third-party retailer. *Manley*, 417 F. Supp. 3d at 1124 (dismissing claim at pleading stage); *see, e.g.*, *Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2012 WL 5381236, at *8 (N.D. Ill. Oct. 31, 2012) (same); *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 678–79 (N.D. Ill. 2005) (same); *Quitno v. Gen. Motors, LLC*, No. 1:18-CV-07598, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020) (same). Plaintiffs' claims under Illinois law should be dismissed.

As for the rest of the jurisdictions that require privity for implied warranty claims, *i.e.*, California, New York, Florida, and Ohio (*see* Defs. Mem. at 20-22), Plaintiffs do not even attempt to identify any exception applicable here. Those claims too should be dismissed.

**V.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT.**

Plaintiffs do not dispute that, if their fraud claims fail, so does their unjust enrichment claim. Plaintiffs' opposition confirms that the Amended Complaint fails to plead any wrongful conduct. Therefore, the unjust enrichment claim should be dismissed.

Dated:  August 25, 2022                             By: */s/ Gavin J. Rooney*
                                                    Gavin J. Rooney
                                                    Reynold Lambert
                                                    **LOWENSTEIN SANDLER LLP**
                                                    1251 Avenue of the Americas
                                                    New York, NY 10020
                                                    212.419.5853

By: */s/ Julie M. Brummond*
**FOLEY & MANSFIELD, PLLP**
Julie M. Brummond
70 West Madison Street, Suite 3000
Chicago, IL 60602
312-254-3810
312-254-3801 (Fax)
jbrummond@foleymansfield.com

*Attorneys for Defendants*

-12-