UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY CASTILLO, SHANNON KEENER, ROBYN LIPETZ, ALEXANDRA ARROYO, GUSTAVO FLORES, NANCY JONES, ZAMARA COLON, KRISTI KELLER, HOLLIE PARRISH, and CORIN FIONDELLA, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | 20 C 6786 Judge Gary Feinerman |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNILEVER UNITED STATES, INC., and CONOPCO, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Emily Castillo and others bring this putative class action against Unilever United States, Inc. and Conopco, Inc. (together, "Unilever"), alleging that certain of their TRESemmé brand hair products contained an unsafe ingredient with undisclosed risks. Doc. 33. Earlier in the litigation, Unilever moved under Civil Rules 12(b)(1) and 12(b)(6) to dismiss the consolidated amended complaint, and the court denied the Rule 12(b)(1) motion, granted the Rule 12(b)(6) motion, and allowed Plaintiffs to replead. Docs. 54-55 (reported at 2022 WL 704809 (N.D. Ill. Mar. 9, 2022)). Plaintiffs filed a second consolidated amended complaint, Doc. 61, and Unilever again moves to dismiss, Doc. 67. The motion is granted, and the case is dismissed with prejudice.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v.*

*N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Unilever designs, formulates, produces, manufactures, sells, and distributes TRESemmé brand hair products. Doc. 61 at ¶¶ 2, 20. Certain TRESemmé shampoos and conditioners contain DMDM hydantoin, a formaldehyde-releasing preservative, as an ingredient. *Id*. at ¶¶ 26, 32. People allergic to DMDM hydantoin can experience adverse reactions—including itchiness, rashes, dermatitis, hair brittleness, and hair loss—when exposed to it, and formaldehyde is a carcinogen. *Id*. at ¶¶ 30-31, 37-41. According to Plaintiffs, because the products "cause[] repeated exposure to formaldehyde," they are "dangerous," "unfit for sale," "toxic," and "defective." *Id*. at ¶¶ 81, 89, 305.

The TRESemmé products state on their front label that they are "Keratin Smooth," and a "system" designed to add "shine" and "smooth" hair. *Id*. at ¶¶ 43, 75. The front label does not disclose the presence of DMDM hydantoin or warn of its risks, but DMDM hydantoin is listed as an ingredient on the back label. *Id*. at ¶¶ 48, 60. The back label also states that the "Keratin Smooth system … gently cleanses and nourishes hair." *Id*. at ¶ 94 (emphasis omitted).

Plaintiffs are consumers who purchased and used the TRESemmé products in California, Florida, Illinois, Michigan, New Jersey, New York, Ohio, Pennsylvania, and Texas. *Id*. at ¶¶ 86, 124. Had they known that the products would expose them to formaldehyde, Plaintiffs would not have purchased the products or would have paid less for them. *Id*. at ¶¶ 105-106, 122, 128, 134-135, 146-147, 158-159, 170-171, 182-183, 194-195, 206-207, 218-219, 230-231, 297.

## Discussion

The operative complaint asserts state law claims for statutory and common law fraud, breach of express and implied warranty, and unjust enrichment. *Id*. at ¶¶ 258-478. Although the complaint also asserts a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*., Plaintiffs have withdrawn that claim, Doc. 70 at 11 n.3.

**I.        Fraud and Unjust Enrichment**

For the fraud claims to survive dismissal, Plaintiffs must sufficiently allege a deceptive act or practice. Neither party suggests that this question turns on which State's law applies, Doc. 65 at 22-26; Doc. 70 at 14-25, so the court will treat Illinois law as representative. *See Ry. Express Agency, Inc. v. Super Scale Models, Ltd.*, 934 F.2d 135, 139 (7th Cir. 1991) ("Where the law of the two states is essentially the same, we apply the law of the forum state."). Allegations of deception "sound[ ] in fraud" and are subject to Civil Rule 9(b)'s heightened pleading standard. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). "Rule 9(b) requires a pleading to 'state with particularity the circumstances constituting fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting Fed. R. Civ. P. 9(b)). "Specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (internal quotation marks omitted).

3

"A deceptive-practice claim under the [Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.,] has five elements: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018). Although Plaintiffs argue that the complaint also alleges an unfair practices claim under ICFA, Doc. 70 at 24-25, that claim relies on the same alleged deceptive conduct underlying the deceptive practices claim and therefore is subject to the same analysis. *See Camasta*, 761 F.3d at 737 ("While [the plaintiff] adds language of unfairness, his allegations of 'unfair practice' are clearly premised upon the primary claim that [the defendant] utilized a fraudulent sales technique. Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [the plaintiff]'s allegations are entirely grounded in fraud under the ICFA."); *Haywood*, 887 F.3d at 333 ("Although [the plaintiff] brings one ICFA claim alleging unfair practices, that claim still sounds in fraud because it relies upon the same baseline allegation that [the defendant] intentionally misled consumers by hiding information on the length of massage time.").

As to the first element of an ICFA claim, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). That standard is met when a plaintiff shows "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020) (internal quotation marks omitted); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (explaining that the standard is met by a statement that "is either

4

(1) literally false, or (2) likely to mislead (either through a statement or material omission) a reasonable consumer") (internal quotation marks omitted). Whether a statement is deceptive must be considered "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477.

Plaintiffs do not allege that the TRESemmé products failed to smooth, nourish, cleanse, or repair their hair. Doc. 61 at ¶¶ 125-234. They instead allege that the product labeling and Unilever's advertising represented that the products would "*safely* smooth, nourish, cleanse, and/or repair" their hair, and that the representation was false given the risk of formaldehyde exposure from the presence of DMDM hydantoin. *Id*. at ¶¶ 43-44, 88, 129-130, 141-142, 153-154, 165-166, 177-178, 189-190, 201-202, 213-214, 225-226. That allegation does not satisfy the deceptive act or practice element of an ICFA claim.

True enough, the TRESemmé products' front labels make a variety of statements about quality, such as "Keratin Smooth," a "system for smooth" and "shiny" hair, and "salon quality" for "frizz control." Doc. 61 at ¶ 43. But those representations do not suggest the absence of formaldehyde or relate to safety in any way. And while the products' back labels state that they "gently cleanse," Doc. 61 at ¶ 94, Plaintiffs do not allege that reasonable consumers would interpret that statement to mean that the products do not contain DMDM hydantoin or the risk of formaldehyde exposure. *See Souter v. Edgewell Pers. Care Co.*, 2022 WL 485000, at *11-12 (S.D. Cal. Feb. 16, 2022) (holding that a reasonable consumer would not understand "hypoallergenic" and "gentle" on the product's label to mean that the product did not contain ingredients that pose a risk of skin irritation). Such an allegation would be particularly

implausible given that the "gently cleanse" statement appears on the same back label that lists DMDM hydantoin as an ingredient. Doc. 61 at ¶ 48; *see Bober*, 246 F.3d at 938-39 (observing that "to the extent that anyone could imply" from the defendant's true statements a false meaning, "information available to [the product's] users, and in [the plaintiff]'s possession, would dispel any such implication").

At the motion hearing, Doc. 75, Plaintiffs conceded that the TRESemmé products' labeling makes no representation regarding safety. Instead, Plaintiffs pointed to the complaint's allegations that Unilever's *website* represented that the products were safe to use. Doc. 61 at ¶¶ 44, 54-55, 69. But when pressed, Plaintiffs correctly acknowledged that the complaint does not allege that they *read* the website before purchasing the products. It follows that statements on the website cannot have deceived them. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("[T]o maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause."); *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018) ("[P]laintiffs in a class action under the ICFA must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question.") (internal quotation marks omitted). Thus, Plaintiffs fail to allege that Unilever's product labeling or marketing was deceptive as to the presence of DMDM hydantoin in the products. *See Bober*, 246 F.3d at 938-39 (dismissing an ICFA claim where the product's labeling made true statements that could not reasonably be read as making any false implication given the information available to the plaintiff).

Plaintiffs argue that this conclusion runs contrary to *Bell*, where the Seventh Circuit cautioned that whether a product's labelling is deceptive "may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive." 982 F.3d at 480. In *Bell*, the court rejected the argument that an "accurate fine-print list of ingredients" on a product's back label could "foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id*. at 476. In Plaintiffs' view, *Bell* means that Unilever cannot escape liability by accurately listing DMDM hydantoin as an ingredient on the TRESemmé products' back label. Doc. 70 at 14-16.

*Bell* is inapposite here because the TRESemmé products' labeling—front, back, or otherwise—contains no ambiguity potentially deceptive to a reasonable consumer. That is, the labels do not even obliquely suggest that the product does not contain DMDM hydantoin or will not expose users to formaldehyde. There is therefore no need to look to the ingredient list to clear up any potentially deceptive misrepresentation. *See Rice v. Dreyer's Grand Ice Cream, Inc.*, 2022 WL 3908665, at *4 (N.D. Ill. Aug. 30, 2022) (rejecting a similar argument based on *Bell* because the product's label had no potentially deceptive ambiguity).

Nor can Plaintiffs proceed on an omission-based ICFA claim. Unilever did not fail to disclose the presence of DMDM hydantoin in its TRESemmé products, as the ingredient is listed on the back label. Doc. 61 at ¶ 48. Still, Plaintiffs argue that Unilever failed to disclose the risk that DMDM hydantoin can cause formaldehyde exposure. Doc. 70 at 17. But "[u]nder the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) (citing *De Bouse*, 922 N.E.2d at 316). All Plaintiffs allege is a general failure to disclose, and without pointing to any statement regarding safety that conveys a material omission that they relied on,

they have no viable omission-based ICFA claim. *See Cmty. Bank of Trenton*, 887 F.3d at 822-24 (holding that the plaintiff, in alleging that the defendant failed to warn consumers of its compromised payment system, "cannot rest on vague accusations about inadequate disclosures," but instead "must actually identify a deceptive guarantee about data security in order to state an ICFA claim"); *Bondick v. Ricoh Imaging Americas Corp.*, 2022 WL 2116664, at *4 (N.D. Ill. June 13, 2022) (dismissing an omission-based ICFA claim where "[t]here [wa]s no other alleged direct communication" other than the defendant's "holding out" their product "accurately … through a third-party retailer"); *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021) (dismissing an omission-based ICFA claim where the plaintiff "did not allege any direct statements that contain[ed] material omissions, only opportunities or locations where Skechers could have disclosed the alleged defect," such as "advertising, labeling, and packaging") (internal quotation marks omitted); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719-20 (N.D. Ill. 2020) (holding that the plaintiff did not state an omission-based ICFA claim where he alleged that the defendant failed to disclose dangers posed by its vehicles, but "d[id] not identify any particular direct statements from [the] [d]efendant that contain[ed] material omissions"); *cf. Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 910, 916-17 (N.D. Ill. 2013) (holding that the plaintiffs stated a viable ICFA omission claim where the product's labeling failed to disclose that its ingredients caused hair loss under "any and all circumstances," and instead falsely stated that the product contained "No Formaldehyde" and warned of "hair breakage" only under certain circumstances); *Lipton v. Chattem, Inc.*, 2012 WL 1192083, at *5 (N.D. Ill. Apr. 10, 2012) (holding that the plaintiff stated a viable ICFA claim where "[t]he labeling stated that [the product] contained chromium, but failed to mention hexavalent

8

chromium, which (allegedly) is a big difference"). Plaintiffs' ICFA claim accordingly is dismissed.

Because the TRESemmé products are not deceptively labeled, Plaintiffs' common law fraud claim fails as well, as an element of that claim is "a false statement of material fact." *See Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005). With respect to alleged omissions, Plaintiffs assert only that the complaint's "allegations are sufficient to state a claim for omission of material facts *under the ICFA*." Doc. 70 at 17 (emphasis added). Plaintiffs accordingly have forfeited any argument that the complaint states a common law fraudulent omission claim. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (internal quotation marks omitted).

Given the failure of Plaintiffs' fraud claims, their unjust enrichment claim—which, as they admit, "is tied to the fate of the claim under the Consumer Fraud Acts," Doc. 70 at 32— necessarily fails as well. *See Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

## II.     Breach of Warranty

The same result obtains for Plaintiffs' warranty claims. Although resolution of some warranty issues may require applying a particular State's law, the parties do not suggest that

9

compliance with an express or implied warranty is among them. Doc. 65 at 28-31; Doc. 70 at 25-28. The court's analysis of that element of the warranty claims is therefore uniform regardless of which State's law governs.

Plaintiffs only argument to support their warranty claims is that because the TRESemmé products contained DMDM hydantoin, they "did not safely smooth, nourish, cleanse, and/or repair hair," as the labels promised. Doc. 70 at 26-28. As explained, Plaintiffs' allegations do not give rise to a reasonable inference that Unilever warranted that the products did not contain DMDM hydantoin. And the complaint does not allege that the products did not, as the labels warranted, "smooth, nourish, cleanse, and/or repair" Plaintiffs' hair. Doc. 61 at ¶¶ 125-234. The warranty claims are accordingly dismissed. *See Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007) ("If a seller delivers conforming goods, the warranty is satisfied."); *Cont'l Sand & Gravel, Inc. v. K&K Sand & Gravel, Inc.*, 755 F.2d 87, 91 n.3 (7th Cir. 1985) (holding that a breach of warranty claim failed where the goods "conformed to the warranties"); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *6 (N.D. Ill. Mar. 1, 2022) ("Chiappetta's claims for breach of express and implied warranties suffer from the same infirmity as Chiappetta's ICFA claim: Kellogg never made the representation that Chiappetta claims it made.").

## Conclusion

Unilever's motion to dismiss are granted, and Plaintiffs' claims are dismissed with prejudice. Although Plaintiffs request leave to amend, Doc. 70 at 4 n.2, the court has already given them an opportunity to replead, and they do not suggest how the defects in their claims might be cured. *See Haywood*, 887 F.3d at 335 ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not

request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend where there is … repeated failure to cure deficiencies, … or where the amendment would be futile.") (internal quotation marks omitted).

December 28, 2022

_____
United States District Judge